## Bank *against* Douglass.

A judgment given by a principal to a surety as an indemnity against the consequences of the suretyship, is not unavailable before the surety is actually damnified, for he may use it to compel the payment of the money by the principal. And upon the sale of the real estate of the principal, before the surety is at all damnified, upon his assignment of the judgment to the creditor of both, he will be entitled to have the money paid to him on that judgment.

APPEAL from the common pleas of *Dauphin* county.

This was an appropriation of the proceeds of the sale of the real estate of John Douglass. The claimants were the Harrisburg Bank and James Wilson. The judgments stood thus:

George Parson *v.* John Douglass. Judgment 4000 dollars. Entered the 9th of March 1831. This judgment was given to the plaintiff by the defendant as an indemnity to him for indorsing two notes of 770 dollars and 900 dollars, to the Harrisburg Bank: and in December 1834 the plaintiff, George Parson, assigned it to the Harrisburg Bank, the two notes not having been paid.

James Wilson *v.* George Parson and John Douglass. Judgment 650 dollars. Entered the 7th of January 1832.

The Harrisburg Bank, indorsee of George Parson *v.* George Parson. This was a judgment against the indorser for the amount of the two notes before mentioned, which was obtained the 14th of February 1835, and upon which there had been no further proceeding. The court below gave the following opinion, and decreed accordingly; from which the Harrisburg Bank appealed.

[Bank v. Douglass.]

"In this case the money is claimed by the Harrisburg Bank as assignee of George Parson. The oldest judgment is in favour of George Parson. That judgment was given to secure George Parson for two notes indorsed by him for John Douglass, drawer; one for 900 dollars, and one for 770 dollars, and discounted by the Harrisburg Bank. Those notes have been protested, and judgments obtained on them against Douglass and against Parson; but nothing has been paid on them by Parson. The judgment next in date is in favour of James Wilson v. George Parson and John Douglass. The assignee of Parson is in no better situation than Parson. Parson, having paid nothing, could not recover more than would be necessary to indemnify him for the judgment obtained against him. This could be only nominal; but his insolvency makes it improbable that he will actually pay any thing. The judgment of Wilson v. Parson and Douglass, is the proper debt of Parson for which Douglass is security. The payment of that debt is equally for the benefit of Parson, with the payment of the debt to the Harrisburg Bank for which Parson is security for Douglass. This disposition of the funds precludes the possibility of prejudice to either Parson or Douglass, and seems to be conformable to law, inasmuch as Parson has sustained no actual damage for which he can claim compensation by means of his judgment against Douglass."

*Harris* and *Shoch*, for appellants, cited, 1 *Watts* 135; Carmack v. Commonwealth, 5 *Binn.* 190.

*Alricks*, contra, cited, Miller v. Howry, 3 *Penns. Rep.* 374.

The opinion of the Court was delivered by

GIBSON, C. J.—The error below was in treating the bank as if it stood by the assignment of the judgment confessed by Douglass to Parson, as a surety indemnified against its own debt, and not entitled to proceed on the security till the surety were damnified by being compelled to pay. If such were the law, the surety could not, with any effect, assign such a judgment to the creditor as a collateral security; for the debt would be extinguished by the only act which could give the judgment vitality. Even were payment necessary to impart such vitality, still the bank, being the hand to receive, and standing in the place of the hand to pay, might, perhaps, elect to consider the original debt as paid in contemplation of law, and proceed on the judgment as an independent security. But neither the bank nor the surety was bound to wait till the surety was actually prejudiced by the default of the principal. The principal was bound to keep the surety not only indemnified, but unmolested; and to this end the judgment given the latter was put into his hands, as an instrument to extract payment from the funds of the principal debtor, and thus to compel him to do what he ought to do. Such is the principle of Miller v. Howry, 3 *Penns. Rep.* 374; and such, too, is the

[Bank v. Douglass.]

principle of Roesevert *v.* Mack, 6 *Johns. Ch. Rep.* 281; in which a counter bond was treated as a debt provable under a commission; and this, too, like the present, in a process of distribution among creditors. The management of the means of indemnity thus put into the hands of the surety, might certainly be delegated to the creditor, to be used in accordance with its original purpose: and why should not the creditor, as well as the surety, have the benefit of it? The difficulty is in the testimony of Parson, who swears, that the relation between him and Douglass was changed to the extent of Wilson's judgment, in which he was principal and Douglass but security, in consequence of Parson's purchase of Hamacher's property on Douglass's judgment, and his retention of the purchase money to answer the debt of Douglass to Wilson, for which the judgment to Wilson was subsequently given. Between Wilson and Parson, therefore, the latter could not insist that his judgment against Douglass should be paid before what was his proper debt; and beside, Douglass would have an equity as surety, not to be disregarded. But what was the object of the judgment given by Douglass to Parson? Parson himself swears it was indemnity to *the bank.* If so, the bank claims paramount to the equities between Parson and Douglass; which it may well do if that were the original purpose of the judgment. It is customary with banks to take a bond and warrant, to be used not only for its own protection, but that of the indorsers, who usually direct the application of it. If, however, it be taken directly to the indorsers, the form of the transaction cannot affect its fiduciary character, if the security be in fact taken for the common benefit of all who have reposed on the credit of the drawer. The court erred, therefore, in thinking the bond could not be enforced before the surety was prejudiced, and that the right of the bank might be affected by the equities between him and his principal.

Decree, that the money in court be paid in satisfaction of the judgment of the bank as assignee of Parson.