## HENNISS *against* PAGE.

#### IN ERROR.

In debt on bond by A. assignee of B., the obligee, against C., the obligor, it appeared, that at the time of giving the bond, a settlement was made, and releases executed, of all claims which A. and B. had against C., and which C. had against A.; and A. having said, "Now you will go and buy another judgment against me," C. replied, "I will not buy any judgment against you. I will pay the bond when it becomes due;" *Held,* that after this agreement, C. could not set off a judgment against B. which was assigned to him after the execution of the bond.

THIS was a writ of error to the District Court for the City and County of Philadelphia.

On the return of the record it appeared, that John Page, assignee of Samuel Page, brought an action of debt against John Henniss on a bond given by the latter to Samuel Page, dated the 3d day of April, 1833, in the penal sum of $800, with condition for the payment of $400, on the 1st day of May, 1835, with interest; which bond was assigned on the 1st day of January, 1835, by Samuel Page to the plaintiff.

The defendant pleaded payment and a set-off, &c.

On the trial before Pettit, President, on the 2d day of June, 1837, the plaintiff gave in evidence the bond and the assignment.

The defendant, by way of set-off, gave in evidence a judgment in the Supreme Court, at July term, 1823, in favour of Eli Thomas and others, against John Hammond and Samuel Page, for $1000, with interest from the 22d of November, 1823; a *scire facias* to revive the same to December term, 1834, served on Samuel Page alone, and judgment thereon December the 13th, 1834, against the said Samuel; also an assignment of the said judgment to the defendant, dated April 3rd 1835. Upon this judgment an execution was issued to July term, 1835, and real estate levied on and sold for $450, leaving a balance of principal and interest still due, exceeding the whole amount of the plaintiff's claim in the bond.

[*276]    *The plaintiff, to avoid this set-off, then called John Bouvier, Esq., who testified as follows:

" I am a witness to the bond; it is in the hand-writing of one of my students. It was prepared in my office, and I think it was signed there. I have no recollection who was present. I presume Mr. Henniss and Mr. Page were there: there is no question about it. I was the counsel of John Henniss in the

(Henniss v. Page.)

transaction.   I acted in the matter as the attorney of Mr. Henniss.   At the time of the execution of the bond, there was, I . think, $200 paid by Mr. John Page to Mr. Henniss ; and there were releases signed and executed by them both ; this is one of the releases.   I think there were two releases given to Henniss, one by John and . one by Samuel Page.   My intention was to close the business forever.   There was an agreement that all the claims which the two Pages had against Henniss should be released and given up, and that Henniss should release John Page. The other $200 of the bond was the difference agreed upon to be due by Henniss to John Page.   There was a note of Henniss's for $400 or $500, claimed by John Page.   I don't know whether it was given up.   Mr. Henniss agreed to give up the judgment in the District Court of 1812.   Every thing was to be settled between them.   I don't know in whose name the note of $400 or $500 was drawn.   John Page held it.   I don't think there was any thing said about H̦enniss's releasing Samuel Page.   At the time the bond was given, Mr. John Page said, "Now you will go and buy another judgment against me :" Henniss said, " I will not buy any judgment against you ; I will pay the bond when it becomes due."   John Page said it was Samuel's money, the whole of the bond : that he, John, was very poor ; that he had been ruined by the Rays.   He acted, or professed to act, throughout the whole of this transaction, as the agent of his son Samuel.   I am not sure that I saw Samuel Page on this occasion.   I think there was a release from him.   He may have been present at the exection of the bond.   I think he was some way connected with the note for $400 or 500. . I thought it necessary for Samuel to execute the release.   I had a claim against Samuel Page in the country, and could not get the money.   It might have been the fault of the attorney.   John Page and Samuel Page were both, I believe, insolvent.   Samuel Page was brought to my office by his father more than once.   I understood Samuel was a teacher : at that time he did tolerably well."

The plaintiff further gave in evidence a judgment in the District Court, in a suit to March term, 1812, by C. Ross v. John Page, October 17th, 1817, Judgment for $406 50.   July 14th, 1831, marked to the use of John Henniss.   Sci. fa. to revive the same to September term, 1831, and judgment thereon the 27th of September, 1831, for $745 96 ; also a release from J. Henniss to John Page, dated April 3rd 1833, of all demands to that date.

· *The defendant then gave in evidence the following receipt :          [*277]

(Henniss *v.* Page.)

"Received, April 3rd, 1834, from Mr. John Henniss, twelve dollars, for six months interest, due on his bond, due this day.
$12.                              JOHN PAGE, agent."

Also a transcript from the docket of Alderman Bartram, in a suit entitled Samuel Page v. John Henniss, brought the 25th of October, 1833, for six months interest on the bond. In connection with this was read from the judge's notes on a former trial, the following testimony of John Bouvier, Esq.

"I witnessed this paper," (release of 3rd April, 1833). "I was not counsel for Mr. John Page at that time. I had been before. I have seen Samuel Page since this bond was executed. Mr. John Page was indebted to me. Mr. Henniss paid me six months interest, and I settled with Mr. Page, giving him the balance. I don't recollect a receipt, but I have no doubt I took a receipt. I recollect no other defence before the magistrate."

The judge charged the jury in substance as follows :

"The defendant claims to set off against the plaintiff's demand on this bond, so much of the judgment held by him against Samuel Page, as will satisfy it ; no notice of the assignment having been given to him previous to his acquiring the judgment ; and such set-off is a good one. But if the jury are satisfied that the bond, at the time it was given, was the property of the plaintiff, although taken in the name of Samuel Page, and that the defendant knew it to be so, then the set-off should be disallowed, and the plaintiff have a verdict. Or if the jury find that at the time the bond was given, it was not strictly the plaintiff's property, yet if the defendant knew the truth, and made a compromise of other matters, with an understanding between the plaintiff and the defendant, growing out of and connected with the compromise, that the bond should be paid at all events when due; and that the defendant should not buy up or present another judgment as a set-off against it, then the jury ought not, in equity or justice, and consequently, in Pennsylvania, ought not in law, to allow the set-off."

The charge was excepted to ; and the jury having found for the plaintiff, the defendant removed the record to this Court, and assigned the following error.

"That the judge instructed the jury, that although the bond, at the time it was given, was not the plaintiff's property, and the defendant had no notice of its assignment until after he had acquired the judgment offered as a set-off, yet they might refuse to allow the set-off, and ought to do so."

[*278]     *Mr. *Graham,* for the plaintiff in error, cited *Lechmere* v. *Hawkins,* (2 Esp. Rep. 626); *Taylor* v. *Okey,*

(13 Ves. 180); *Comfort* v. *Rivett*, (2 Maule & Selwyn, 510); *Coates* v. *Welsh*, (1 Esp. Rep. 378); *Eland* v. *Kerr*, (1 East. 375); *McGillivray* v. *Simpson*, (9 Dowl. & Ryl. 35; 22 Eng. Com. Law. Rep. 383).

Mr. *G. M. Wharton* and Mr. *Phillips*, for the defendant in error, cited *Commonwealth* v. *Clarkson*, (1 Rawle, 291); *Metzgar* v. *Metzgar*, (2 Rawle, 228); *Ramsey's Appeal*, (2 Watts, 228).

The opinion of the Court was delivered by

ROGERS, J.—This is an action of debt on bond, by John Page, assignee of Samuel Page, against John Henniss. The defendant pleaded a set-off, and under that plea gave in evidence a judgment, Eli Thomas v. John Hammond and Samuel Page; a *scire facias* to revive the same; and judgment, December 13th, 1834, against Samuel Page alone; and an assignment of the judgment, on the 3d of April, 1835, to the defendant. In avoidance of the set-off, the plaintiff proved, that at the time the bond was given, John Page said to Henniss, " Now you will go and buy another judgment against me." Henniss said, "I will not buy another judgment against you. I will pay *the bond* when it becomes due." It appears, from a previous part of the testimony, that the bond on which suit was brought was the result of a compromise of former conflicting claims, and a further advance of cash to the defendant, to the amount of two hundred dollars. It would seem, that the precaution was taken, because of a similar difficulty in which the plaintiff had been involved by the defendant. The contract, then, as I understand it, is, that the defendant agrees, that in consideration of a compromise, and of a further advance of money, he will not purchase another judgment so as to set it off against the bond in suit, but that he will pay the same, when it becomes due. The question is, whether the defendant is bound by this agreement. The contract is one which *may* materially affect the interest of the plaintiff; for his credit may depend upon the punctual payment of the money loaned, at the day. Why, therefore, he may not guard himself against this contingency, by such a stipulation, it is difficult to imagine, particularly as there is nothing in the contract either unfair, illegal, or contrary to public policy. The statutes of set-off are intended for the benefit and protection of defendants; and it is grown up a maxim in the law, that a person may waive a statute intended for his benefit. *Quisquis potest renunciare jure per seintroducto*. It is optional with defendants to avail themselves of the statutes of set-off; and if they choose to preclude themselves from this advantage, at the time, or by a previ-

(Henniss v. Page.)

ous agreement, why may they not be permitted to do so? Each party consults his own interest in the agreement, and it is best [*279] to leave parties at full liberty to make their own contracts, unless opposed to some principle of policy or good morals. The argument assumes the broad ground, that whatever may be the consideration or form of the agreement, whether written or parol, yet the defendant can insist on the set-off. For this position, the defendant relies on *Colson Assignee of Hunter*, (1 Esp. Rep. 378); *Lechmere* v. *Hawkins*, (2 Esp. Rep. 626); *Eland* v. *Kerr et al.* (1 East, 375); *Taylor* v. *Okey*, (13 Ves. 180); *Comfort* v. *Rivett*, (1 Maule & Selw. 510); *The Assignees of English* v. *Simons*, (22 Com. Law Reps. 383). The two cases of *Hunter* v. *Welsh*, (1 Esp. Rep. 378,) and *Lechmere* v. *Hawkins*, (2 Esp. Rep. 626,) which gave rise to the doctrine for which the defendant contends, were decided by Lord Kenyon, at Nisi Prius. In *Lechmere* v. *Hawkins*, Erskine contended, that the defendant could have no benefit of his set-off: that where a creditor borrowed money of his debtor, under an express promise to pay it, it bound him under every circumstance to the absolute payment; nor could his undertaking be satisfied by setting off the debt against his own demand. In answer to that argument, Lord Kenyon said, he knew no such law; nor did he think, there was any such legal obligation on the creditor; it might be an honorary obligation, and such as a man who gave it ought to observe; but if he thought fit not to consider such an obligation as binding, he could not compel him. They were mutual subsisting demands at the time of the action brought, and such as the statutes of set-off gave the party defendant power to set off against the plaintiff's demand. Besides this, if he were to refuse the set-off here, it would drive the defendant into a Court of Equity, where the judgment obtained here would be set off against the debt admitted to be due by the plaintiff to the defendant. If, as Lord Kenyon supposed it was the case, of an honorary, and not a legal obligation, no person can question the soundness of the decision, nor that a Court of Equity would relieve the defendant. The decision must be based on the assumption, that the promise amounted to nothing more than what the law implies; for in every contract to pay money, it is implied, that it shall be paid in legal money; and no person doubts, that in such cases, a set-off is a legal defence. But if the promise was part and parcel of the contract, made for a consideration, and without which the contract would not have been made, it is something more than an honorary engagement; it is a legal obligation which a Court will enforce; and this was the opinion of the Court in *Eland* v. *Kerr*. The Court there held, that in estimating the plaintiff's damages, the jury would take into their consideration

(Henniss *v.* Page.)

the loss the plaintiff had sustained by the non-payment of the money; that is, that the jury would give damages for the breach of the contract, which could not be done, unless it was something more than an honorary engagement. The Lord Chancellor decided, in *Taylor* v. *Okey,* on the opinion of Lord Kenyon, as expressed in *Lechmere* v. *Hawkins,* *that a Court of Equity would relieve a defendant. Now that a Court of [*280] Equity would relieve a person against his express agreement, thus in effect enabling him to commit a fraud, is a position supported by no authority which has come under my notice, and which I venture most respectfully to deny. It may be, that a case may occur, under very peculiar circumstances, in which the defendant might claim the intervention of a Court of Equity; but no such circumstances exist here. It is simply the case of a person wishing to be relieved from a contract, with a valid consideration, contrary to no rule of either law or morality. *Eland* v. *Kerr et al.,* was the case of an assumpsit for goods ·sold and delivered. The defendant pleaded a set-off, of more money due to him, from the plaintiff. Replication, that the goods were agreed to be paid for in *ready money;* which replication was held to be bad, on demurrer. Lord Ellenborough, in *Farr* v. *M'Iver,* (16 East, 138,) in speaking of this case, says, "As to the case of *Eland* v. *Kerr,* there a party, upon a sale of goods, had stipulated for ready money payment only, which was held to be satisfied by a payment of his own bill. I defer to the authority, but am not convinced by it." On the authority of the case of *Eland* v. *Kerr, Comfort* v. *Rivett* and *English* v·. *Simons* were ruled; and thus stands the matter on authority in England. From the reasons given, and the doubts expressed, it appears to me plain, that if the defendant had, in addition to the promise to pay in ready money, as in *Eland* v. *Kerr,* expressly agreed that he would not purchase other claims, and set them off against the ·plaintiff's demand, the decision would have been entirely different. But be this as it may, this Court are neither trammelled by authority, nor are we convinced by the reasoning, in the cases cited. If the defendant knew the truth, as to the bond, (as the jury have found,) and made a compromise of other matters, with an understanding between the plaintiff and defendant, growing out of and connected with this compromise, that the bond should be paid, at all events, when due, and that the defendant should not buy up another judgment and set it off against it, then, neither in justice nor equity, ought the set-off to be allowed. In my opinion, a Court of Justice is never better employed, than in sustaining the principles of good faith, and in discountenancing fraud, or breach of contract. My greatest difficulty has been, in determining whether what took place amounted to a contract;

but from this difficulty we are relieved by the verdict of the jury, under the charge of the Court.

Judgment affirmed.

Cited by Counsel, 5 Barr, 379; 3 Grant, 88.
Cited by the Court, 5 Watts & Sergeant, 368; 12 Casey, 234; 2 Grant, 494.

