# Louden *against* Tiffany.

·In an action upon a sealed note by which the defendant promises to pay " without .defalcation for value received," he is not thereby precluded from a defence upon the plea of set-off.

ERROR to the Common Pleas of *Cumberland* county.

Jacob Byerly, for the use of Henry Tiffany, against William M. Louden. This was an action of debt founded upon the sealed note of the defendant and others in the following words :—

*Kingstown, August 1st* 1837.

" We jointly and severally promise to pay to Jacob Byerly or order the sum of five hundred dollars on the first day of February 1839, with lawful interest for the same from this date, without defalcation, for value received. Witness our hands and seals this day."

This note was assigned to Tiffany on the 7th January 1838, and of which Louden had notice 'on the 7th October 1838. The defendant became the owner of several notes and claims against Byerly before the 7th January 1838, and between that date and the 7th October 1838, which he proposed to set-off in this action: but the court below was of opinion that the words "without defalcation" amounted to an agreement on the part of the defendant that he would not make any set-off to the note, and directed the jury to find a verdict for the whole amount of the plaintiff's claim.

*Graham* and *Watts*, for plaintiff in error. Before the Act of 1797, the right of set-off existed in every case, and unless there be some provision there which affects this case, then clearly, the court below erred. That statute was passed for the purpose of giving form to a negotiable instrument which should *not* be subject to set-off in the hand of an endorsee; but the note here sued upon is not of that form; and it has no other character than that which belongs to a specialty, and is subject to set-off, until the payer has notice of the assignment. 4 *Serg. & Rawle* 175; 5 *Pick.* 512; 3 *Whart.* 275; 1 *Serg. & Rawle* 180; 15 *Wend.* 51; 11 *Wend.* 504.

*Biddle* and *Reed,* contra, argued that the right to set-off was as much the subject of control·as any other stipulation between the parties; and if the defendant has contracted in this case to waive the right which he otherwise would have, he is as much bound by it as he would be by his contract on any other subject. 14 *Serg. &*

*Rawle* 127; 2 *Penn. Rep.* 245; 9 *Serg. & Rawle* 137, 193; 12 *Serg. & Rawle* 265; 3 *Whart.* 275.

The opinion of the Court was delivered by

ROGERS, J.—We agree with most of the positions assumed by the court, although we cannot concur with the conclusions drawn from them. Thus, as a general rule, it is true, that the assignee of a bond takes it subject to every equity and defalcation it is liable to in the hands of the assignor at the date of the assignment, and notice of it given to the obligor. It is, we grant, optional with the obligor, whether he will avail himself of the rule of law established for his benefit, as well as others similarly situated, or preclude himself from this advantage by his agreement at the time the bond was executed. The statutes in reference to set-off were. intended for the benefit of defendants; and it is a privilege that they may or may not exercise as they think proper. If they choose by their agreement, to waive the benefit of the statute, they are at liberty to do so, and it is the duty of the court, not to make agreements for parties, but fairly and fully to carry them into execution. And in accordance with this principle is *Henniss* v. *Page,* (3 *Whart.* 275). The case of *Henniss* v. *Page,* was that of an express agreement between the obligor and obligee, by which the obligor, for a valuable consideration, bound himself not to purchase claims against the obligee to set-off against the bond. The promise or agreement was part of the consideration, without which, the bond would not have been given; and, therefore, on the plainest principle of honesty and good faith, the obligor was held to his bargain. We ruled, that he had precluded himself, by his agreement, from setting-off a judgment which had been assigned to him after the execution of the bond. On the authority of the case cited, as I suppose, the Court was of the opinion and so ruled, that because, in the note it is stipulated that it shall be paid at maturity " without defalcation," the defendant is not permitted to defalcate from its amount the notes given in evidence, although they were received by the defendant in good faith, and without notice of the assignment: that he might inquire into the original consideration of the note, but that it was not liable to set-off. If we could give the words " without defalcation" the meaning attributed to them, there would be no resisting the conclusion at which the court had arrived. But when we recollect the reason these words were introduced into common use, I cannot bring my mind to the belief, that any such effect can properly be attached to them. Such a notion seems not to have entered into the heads of either of the parties when they used them. The note is drawn in common form, without any indication of an intention by the defendant to enlarge his liabilities or to preclude himself from the benefit of any defence which the law allows. And that this construction of the words never occurred to either Byerly or the defendant is pretty

manifest, as we cannot otherwise account for their conduct on any rational principles. In *M'Cullough* v. *Houston*, (1 *Dall.* 441), since overruled in 9 *Serg. & Rawle* 193, and 12 *Serg. & Rawle* 265, it was decided, that a promissory note was liable to set-off, although payable to order in the hands of an endorsee. This decision gave rise to the Act of 27th of February 1797; an Act to devise a particular form of promissory note not liable to any plea of defalcation or set-off. It is enacted " that all notes in writing commonly called promissory notes, bearing date in the city or county of Philadelphia, whereby any person or persons, bodies politic or corporate, or copartnership in trade shall promise to pay or cause to be paid to any other person or persons, bodies politic or corporate, or copartnership in trade, and to the order of the payee, for value in account, or for value received, and in the body of which the words " without defalcation" or " without set-off" shall be inserted, shall be held by the endorsees discharged from any claim of defalcation or set-off by the drawer or endorsers thereof; and the endorsees shall be entitled to recover against the drawer and endorsers, such sums as on the face of the said notes or by endorsements thereon shall appear to be due; provided, always, that in every action brought by the holder of any such note, whether against the drawer or endorsers, the defendant may set-off and defalk so far as the plaintiff shall be justly indebted to him in account by bond, specialty or otherwise."

The intention and effect of the Act is, to make a note drawn in the prescribed form, and dated in the city or county of Philadelphia, negotiable, and of course, to have all the qualities of negotiable paper. But the note in suit is not in the form prescribed by the Act. We cannot, therefore, attribute to the maker of it, nor to the obligor of a bond, or the signer of a single bill, an intention to bind them beyond it by the use of those terms. If these words have the magic effect given to them, there was but little use in the Act. It would be a restraining, and not an enabling Act; and by this forced construction, the benefit of a free circulation of paper would be extended, not only to negotiable instruments, but to bonds and specialties, which, by the force of these words, would not be liable to set-off in the hands of a third person, or even of the obligees themselves. All instruments whatever, would pass from hand to hand without being liable to any equity or set-off as between the original parties. But this cannot be; for to preclude a set-off, there must be an express agreement for a valuable consideration, as in *Henniss* v. *Page*, already cited. Such an agreement cannot be inferred from the use of words of equivocal import. This point was brought to the notice of the court and virtually decided in *Lighty* v. *Brenner*, (14 *Serg. & Rawle* 127). It was an action on a promissory note drawn by Henry Lighty, payable to Christian Neff or order, without defalcation, for $300, dated Lancaster, November 25th 1816, payable the 1st of April

v. — 47

[Louden v. Tiffany.]

1817. On the 6th of January 1817, Neff assigned all his right and title to the note under his hand and seal to Brenner and Read, who were the plaintiffs. The defence was set-off, and an equitable defence against Neff, the payee of the note. It was replied, that the defence could not avail either as against Neff or his assignee, because he had stipulated that no defalcation should be made. It was strenuously contended, that the note being made payable without defalcation, amounted to an agreement that no set-off should be made even as between the original parties to the note. The court, however, notwithstanding the objection, were with the defendant, which could not be, as is subsequently shown in *Henniss* v. *Page*, unless on the supposition that the words " without defalcation" did not import an agreement not to defalcate or make set-off against the note. That the defendant had no idea that he had precluded himself from a set-off is evident, for we find him purchasing claims against Byerly without scruple or suspicion, and in ninety-nine cases in one hundred in the common course of business, parties would act under the same impression. Some of the notes were assigned to the defendant before the note on which suit is brought was transferred to the plaintiff, and all of them before he had notice of the assignment. If the argument of the plaintiff's counsel proves anything, it proves that even as between the promisor and the promisee or payee, the obligor and obligee, no set-off can be allowed where the words " without defalcation" are used ; and if this be so, such instruments have a greater effect even than if made payable to order or strictly negotiable; for it must be conceded, as well on the words of the Act as on commercial principles, a set-off is allowed between the original parties. Nor can it be pretended that the assignees are in any better condition than Byerly, inasmuch as it is not a negotiable instrument, and it was, therefore, his duty to inquire of the defendants whether he had any defence, and to give him notice of the assignment.

Judgment reversed, and a *venire de novo* awarded.