# Ardesco Oil Co. *versus* North American Oil and Mining Co.

1. A lessee, from a lessor whose premises were subject to forfeiture for non-payment of a coal royalty and other debts, much being in arrear, in consideration of the lease covenanted to pay the royalty in arrear and accruing rent and the other debts. Suit was brought on his covenant, he could not set off debts due by the lessor to him.

2. A party may debar himself by agreement express or implied from pleading a set-off.

3. A covenant being under seal an action upon it can be brought only in the name of the covenantee.

4. Such suit may be for the use of those beneficially interested; the court will control the execution, so that the money shall be appropriated as agreed on.

5. The sums to be paid to others were not rent, but were payable immediately or within a reasonable time, being the consideration of the grant.

6. The lessee by the covenant as between him and the lessor became the principal debtor and the lessor the surety.

7. As soon as a surety's obligation becomes absolute he may require the principal to exonerate him, although the creditor may not have demanded payment.

8. Vesting a separate equity jurisdiction in the courts has not changed the rule that equity is part of the law of Pennsylvania and may be administered by common-law forms.

9. The obligee in a bond to indemnify against claims may sue as soon as a claim is made, without waiting for judgment or even till a suit be commenced.

10. A corporation unless expressly restrained by law has an unlimited power over its property and may dispose of it as fully as a natural person.

11. An insolvent corporation may make an assignment for the benefit of creditors; the power may be exercised by its directors.

12. *Omne majus continet in se minus*, applied.

13. Reed *v.* Penrose, 12 Casey 214, remarked on.

November 3d 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Ardesco Oil Co. *v.* N. A. Mining and Oil Co.]

Error to the District Court of *Allegheny county :* No. 63, to October and November Term 1869.

On the 30th of May 1868, The North American Oil and Mining Company, for the use of Francis H. Macy, trustee of Josiah Macy's sons, brought an action of covenant against The Ardesco Oil Company. The defendants pleaded *non est factum*, covenants performed *absque hoc*, set-off, payment with leave, and an additional plea denying the validity of the transfer by the legal to the equitable plaintiff of the lease sued on.

The facts of the case are as follows :—

On the 13th of January 1858, E. F. Denny leased to J. F. Johnston, for fifteen years, a coal-right under a tract of land in Armstrong county, he to pay every six months one-third of a cent per bushel for the coal mined, and if the rent should be unpaid for thirty days after demand, the lessor might enter and the lease be forfeited. On the 1st of July 1859, the North American Company accepted the lease from Johnston "subject to all conditions." On the 11th of April 1866, the North American Company mortgaged the premises to Francis H. Macy, in trust for Josiah Macy's sons, to secure a bond in the penalty of $150,000, conditioned for the payment of $25,000, with interest payable semi-annually, and for all such further advancements as Macy's sons should make to the company, with interest, in the aggregate amounting to $75,000, with proviso that in default of payment of any instalment of interest for thirty days, the mortgage might be sued out.

On the 1st of July 1867, the North American Company leased the premises to the defendants for two years:—

"In consideration whereof the said Ardesco Oil Company agrees to pay and discharge all arrears of interest due and owing on a certain mortgage for $25,000, held by Josiah Macy's sons against the party of the first part, together with all interest that shall accrue during the term of their lease. Also to pay and discharge all cash advanced by said Macys for insurance on the premises. Also to pay all arrearages of taxes due on the demised premises as well as all taxes that shall be assessed during the term of this lease. Also to pay all rents due on the demised premises to Mrs. Elizabeth F. Denny, and such as shall become due and payable on the same during the term of this lease. Also to pay whatever sums, if any, shall be due persons for labor on the premises. Also to keep the premises insured to a reasonable amount in some responsible insurance company during the lease."
\* \* \*

On the 9th of March 1868, the North American Company assigned all their interest in this lease to Francis H. Macy, trustee for J. Macy's sons.

The case was tried before Kirkpatrick, J.

The plaintiffs gave evidence that "the consideration of the

transfer of the lease to Macy was: the North American Oil and Mining Company were indebted to the Macys for money paid, and the mortgage spoken of, for interest due and unpaid, for insurance-money advanced by them and unpaid to them by the North American Oil and Mining Company. These formed the consideration of the transfer of the lease to the Macys. They were to credit the money received under the lease on the mortgage and other advances."

They gave evidence that the coal-rent due to Mrs. Denny, for coal on the 1st of January 1868, was $1026.74; that the defendants had paid no coal-rent; also that the president of the defendants knew of the mortgage, of the interest in arrear, of unpaid taxes, insurance advances, and Mrs. Denny's rent; the North American Company had been frequently called on for taxes.

They gave in evidence the amounts in detail of interest due on the mortgage, of taxes, of insurance and Mrs. Denny's rent.

The defendants offered in evidence, as set-off, a number of notes due by the North American Company to third persons amounting to about $10,000, endorsed to the defendants, with proof that they owned them before the commencement of the suit; some of them before the assignment of the lease to Macy. The offer was rejected and a bill of exceptions sealed.

They renewed the offer, with the additional offer that the North American Company was insolvent at the trial and when the suit was brought. This was rejected and a bill of exceptions sealed.

The plaintiffs submitted these points which were affirmed:—

3. Under the covenant of the defendants to pay and discharge all arrears of interest due and owing on the mortgage, and all interest that shall accrue during the terms of the lease, they assumed the same liability which rested upon the North American Oil and Mining Company to Macy; that is to say, to pay within a reasonable time, or on demand, the arrears of interest and the accruing interest, according to the terms of the mortgage, and the defendants having failed and neglected to pay, have violated their covenant, and plaintiffs are entitled to recover all interest due and unpaid at the commencement of this action.

5. Under the covenant to pay the taxes, it was defendants' duty to pay within a reasonable time, and if the jury believe the evidence of Joseph Myers and others, defendants have violated their covenant in this respect, and plaintiffs are entitled to recover all taxes unpaid at the date of the lease of July 1st 1867, and all assessed since that date, and prior to the bringing of this action.

6. The plaintiffs are entitled to recover the amount of the rent unpaid to Mrs. Denny at the bringing of this action, together with interest thereon.

The defendants submitted these points which were refused:—

2. The payments to be made by defendants are in the nature of rent, and no time having been fixed for the payment thereof, there was nothing due from the lessee to the lessor before the expiration of at least one year of the term. Accordingly, this suit having been brought prior to that time, plaintiffs cannot recover.

3. If the last point be declined, then the covenants by defendants, the breaches of which are declared on, were in the nature of agreements to indemnify the plaintiffs *pro tanto*. And the plaintiffs having given no evidence that they had been called on since the date of the lease to make payment, and there being no evidence or claim that they have paid the respective amounts against which they were thus indemnified, have failed to show special damages, and cannot in this suit recover more than nominal damages for the breach of said covenants.

4. The equitable plaintiffs held the lease subject to all equities between the legal plaintiffs and defendants at the time of bringing this suit.

5. No sufficient authority has been shown for the execution of the lease in evidence, and the said lease as a deed was null and void. The only rights arising to the plaintiffs would be for the use and occupation of the premises by the defendants.

6. The board of directors of the North American Oil Company had no power or authority to make the lease, upon which this suit is brought.

7. The plaintiffs cannot in this suit recover more than nominal damages for breach of the covenants to pay the rent due Mrs. Denny or the interest due Macy.

The verdict was for the plaintiffs for $9202.61.

The defendants removed the case to the Supreme Court, and assigned for error:—

1 and 2. The rejection of their offers of evidence.

3–8. The refusal of the defendants' points.

9–11. The affirmance of the plaintiffs' points.

*H. Burgwin,* for plaintiffs in error.—The payments to be made to Mrs. Denny and the Macys, under the lease to the defendant, were rent: Raed *v.* Knox, 1 Am. Law Jour. 635. No time being fixed for its payment, it was payable yearly: Menough's Appeal, 5 W. & S. 432; Boyd *v.* McCombs, 4 Barr 148. At most, the lease was a contract of indemnity, but the Macys and Mrs. Denny had not proceeded, and there was no damage incurred: Sedgwick on Damages 311. If the company could not become owner of the notes, this could not be taken advantage of against the notes: Coil *v.* Pitts. Fem. College, 4 Wright 439; Goundie *v.* Northampton Water Co., 7 Barr 233: McFarlan *v.* Triton Ins. Co., 4 Denio 392; Farmers' Loan & F. Co. *v.* Perry, 3 Sandf. Ch.

[Ardesco Oil Co. v. N. A. Mining and Oil Co.]

339; Barker v. Michigan Ins. Co., 3 Wend. 94; New York Ins. Co. v. Sturges, 2 Cowen 664; Potter v. Bank, 5 Hill 490; Angell & Ames on Corp. § 261–271.

*E. S. Golden* and *J. K. Kerr*, for the defendants in error.—After the assignment the defendants could not purchase claims against the North American Co.: Struthers v. Brown, 8 Wright 469; Blair v. Mathiott, 10 Id. 262. The offer was properly rejected as a whole: Sennett v. Johnson, 9 Barr 335. The defendants had no power to purchase the notes: Penna. Railroad v. Canal Commissioners, 9 Harris 9. They were precluded, by the terms of the lease, from purchasing the notes: Steamship Co. v. Heron, 2 P. F. Smith 282; Abbott on Corp. 418, pl. 11. The possession of the notes at the trial is no evidence when they were purchased: Smith v. Myler, 10 Harris 36; Speer v. Sterrett, 5 Casey 194. An action could be brought before the person indemnified had been sued or paid the money: Miller v. Howry, 2 Penna. R. 374; Bank v. Douglass, 4 Watts 95. The defendants having enjoyed the benefits of the lease, cannot deny the power of the lessor to make it: Howard v. Murphy, 11 Harris 173.

The opinion of the court was delivered, January 3d 1871, by

Sharswood, J.—The 1st and 2d errors assigned are to the rulings of the learned judge below in excluding the offer of the defendants to prove a set-off, consisting of promissory notes of the plaintiffs, past due and originally drawn in favor of third persons, and by them endorsed to the defendants. Waiving the consideration of other objections made to the admission of this evidence, we think that it was rightly rejected because clearly precluded by the terms of the lease sued upon. That a party may be debarred from availing himself of the Act of Assembly about defalcation by an agreement not to plead it, either express or implied, has been adjudged by this court in Henniss v. Page, 3 Whart. 275; Bank of the United States v. Macalister, 9 Barr 475; Reed v. Penrose, 12 Casey 214. So far as this question is concerned, the court in the case last cited may be stated to have been unanimous, for, although Mr. Justice Strong thought that the contract in that case did not, by implication, prevent the defendant garnishee from setting up his claims against the company as an answer to the attachment of another of their creditors laid upon the money in his hands, yet he admitted, in clear and distinct terms, the general principle as stated. "This right of defalcation," said he, "is a legal right, secured to a defendant in all cases where he holds demands against a plaintiff, due in the same right and due at the time when the suit was commenced against him. I agree that he may, by express contract, preclude himself from pleading a set-off. Such a contract, founded on consideration, would bind him.

[Ardesco Oil Co. *v.* N. A. Mining and Oil Co.]

This I understand to be the principle of Henniss *v.* Page, 3 Whart. 275, and, I think, a defendant may also debar himself from using a set-off by a contract not express. Thus, if he receives money delivered to him for his application to a particular use, his receipt may amount to an agreement not to apply it to any other use, and, of course, not to his own, by pleading a set-off." The example thus stated of an agreement necessarily implied is in effect the very case now before us. The defendants bound themselves to apply the consideration they were to pay for the grant of the lease to a particular use, and they cannot apply it to any other use, and, of course, not to their own in payment of the promissory notes which they have bought up and hold. The covenant contained in the lease was that the consideration should be paid to certain creditors of the lessors who held encumbrances upon the leased premises. It was for the purpose of relieving it from these liens. Had a clause been added that it should not be applied to any other debts, it would not have been stronger by such express agreement than that which was thus necessarily implied. The covenant being under seal, the action could only be brought in the name of the covenantees, as was held in De Bollé *v.* The Penna. Ins. Co., 4 Whart. 68; yet it may be sued and recovered upon to the use of the parties to whom the money was to be paid, and the court will so control the execution upon the judgment as that it shall be eventually appropriated as agreed upon.

The 3d error assigned is to the refusal of the learned judge to charge as requested in the defendants' 2d point, that this suit had been prematurely brought, because the obligation to pay by the defendants did not accrue and become due until the expiration of the term granted by the lease. This proposition proceeds upon the idea that the payments stipulated to be made were in the nature of rent, and no time being expressly fixed were not payable until the land had been enjoyed. But it is very evident that the covenant to pay these debts was an immediate one, for they were then already due, and the very object of the stipulation was to save the property from being proceeded against and thus lost to the lessors. The covenant was the consideration for the grant of the lease and not for the enjoyment of the property. When a lease is granted with the reservation of only a pepper-corn or nominal rent or with no rent at all, the consideration may lawfully be and usually is a sum of money paid in cash. There is nothing to prevent it from being to be paid at a certain time in the future, or as here without any time, which is either that it shall be paid forthwith or in a reasonable time—it matters not which, so far as this case is concerned. It was not reserved as rent, and it is very plain that the parties did not so intend it.

The 4th, 8th, 9th, 10th and 11th assignments of error may be

[Ardesco Oil Co. v. N. A. Mining and Oil Co.]

considered together. They are all grounded upon the position that the covenant sued upon was one of indemnity merely, and the plaintiffs not having shown that the encumbrances had been enforced against the property or that they had been compelled to pay them, they had suffered no actual damage, and therefore could recover at most but a nominal sum. The answer to this position is twofold. The covenant in its terms was a direct and absolute engagement to pay at once or within a reasonable time, and the lessees not having done so it was broken, and the covenantees as the legal plaintiffs could recover the whole amount to the use of the creditors to whom the amount had been specially appropriated by the agreement. But even supposing it to be an indemnity merely, we must regard the lessees by their absolute engagement to pay as assuming the place of principals while the plaintiffs became sureties merely. Though as to the creditors the plaintiffs remained principals, as between them and the defendants they were sureties. Then it is well settled that as soon as the surety's obligation to pay becomes absolute he is entitled in equity to require the principal debtor to exonerate him, and he may at once file a bill to compel an exoneration, although the creditor has not demanded payment from him: Beaver v. Beaver, 11 Harris 167. Equity is part of the law of Pennsylvania, and is administered through common-law forms; for the greater period of her history could only be so administered. The vesting of separate equity jurisdiction in the courts has not changed the law in this respect. Hence on a bond or covenant to indemnify against claims the obligee is entitled to sue as soon as a claim is made and need not wait until judgment is recovered against him or even until an action is commenced: Miller v. Howry, 3 Penna. R. 374; Bank v. Douglass, 4 Watts 95; Stroh v. Kimmel, 8 Watts 157; Leber v. Kauffelt, 5 W. & S. 440; Carman v. Noble, 9 Barr 366.

The 5th assignment of error complains of the refusal of the court to affirm the defendants' 4th point, which was "that the equitable plaintiffs held the lease subject to all equities between the legal plaintiffs and defendants at the time of bringing this suit." In the abstract this proposition was certainly true, but it was entirely irrelevant to any question before the jury. No evidence had been given of any equities, unless the defendants considered their alleged set-off to be such, and that as we have seen was no equity at all; for the defendants had precluded themselves by their own agreement from setting it up against the legal plaintiffs.

The remaining errors complained of in the 6th and 7th assignments may be considered together: namely, that the directors of the corporation, plaintiffs, had no power to make the lease sued on. It is supposed that a company chartered for the purpose of manufacturing and refining oil cannot lease its entire property

[Ardesco Oil Co. *v.* N. A. Mining and Oil Co.]

and so defeat the very purpose for which its charter was granted. But corporations, unless expressly restrained by the act which establishes them or some other Act of Assembly, have and always have had an unlimited power over their respective properties, and may alienate and dispose of the same as fully as any individual may do in respect to his own property. Hence an insolvent corporation may make a general assignment for the benefit of its creditors, and this power may be exercised by the directors, unless special provision to the contrary is made in the charter: Dana *v.* The Bank of the United States, 5 W. & S. 223. If they can alienate absolutely, they may lease, which is but a partial or temporary alienation. *Omne majus continet in se minus.*

Judgment affirmed.