ALEXANDER GUTCHESS, Appellant, *v.* GEORGE B. DANIELS et al., Respondents.

The right of set-off may be waived by the party entitled to it, and where he for a valuable consideration by an agreement deliberately made contracts to waive it, the agreement is binding, and he is estopped from thereafter asserting the right.

G. and Y., plaintiff's assignors, were indebted to defendants, which debt they were unable to pay, they thereupon entered into an agreement with defendants by which the latter upon being secured against losses, agreed to make advances upon the purchase of produce by the former to the amount of its cost, which was to be consigned to them for sale on commission, they to have the usual commissions thereon, one-half of the net profits to be applied upon the debt, and the other half to be paid to the consignors; defendants expressly agreeing that they would retain but one-half, nor seek to set-off their debt against the other half. Under the agreement G. and Y. purchased and shipped to defendants a boat load of wheat which was sold at a profit. In an action to recover the one-half thereof defendants pleaded their debt as a set-off. *Held*, that the agreement was for a sufficient consideration, and that defendants were thereby estopped. (The cases bearing upon this question collated and discussed.)

(Submitted June 3, 1872; decided June 11, 1872.)

Appeal from order of the General Term of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial.

The action was brought to recover the sum of $748.72, being one-half of the net profits claimed to belong to plaintiff as the assignee of the firm of Gutchess & Yawger, as their share of the net profits arising from the sale of one boat load of wheat consigned by them to defendants, and received and sold by defendants as commission merchants.

On the 29th day of July, 1867, Gutchess & Yawger contracted with the defendants, that they should purchase grain at Port Byron, N. Y., and other places, and ship the same to the defendants at New York city, and that G. & Y. should draw drafts upon said defendants for money to pay for said grain. Gutchess & Yawger also agreed to and did place in the hands of the defendants certain promissory notes, to the amount of $5,000, which were to be held as collateral security for any losses that might occur in this transaction.

Defendants agreed to accept drafts drawn by G. & Y. on them for the money expended in the purchase of said grain, and pay the same, and to accept the grain and sell the same for said Gutchess & Yawger for their usual commission.

It was also agreed that defendants should apply one-half of the net profits arising from the purchase and sale of said grain to the payment of certain indebtedness of said Gutchess & Yawger to defendants (which indebtedness was then past due and amounted to $4,403.81); the other half to be paid to Gutchess & Yawger, and not to be otherwise applied by defendants. Defendants expressly agreeing that they will not seek to set-off their debt against it.

In pursuance of this contract, G. & Y. purchased 7,236 bushels and fifty-eight pounds of wheat in August, 1867, and shipped the same to defendants; defendants received and sold the same, and the net profits, over and above all charges, commissions and deductions to be made therefrom, was $1,497.44.

Defendants, on the 21st of August, 1867, credited G. & Y. one-half of the net profits, $748.72, and applied it on the debt of G. & Y. to them as agreed.

On the 7th of September, 1867, G. & Y. demanded the other half of the profits, which defendants refused to pay over to them.

The referee decided that plaintiff was entitled to judgment for the one-half of the net profits and interest, and judgment was entered accordingly.

*H. V. Howland* for the appellant. The right of set-off is a statutory one and may be waived by agreement. (*Hennis* v. *Paige,* 3 Wheat., 275; Waterman on Set-offs, 10–12.) The contract to waive it is binding. (Waterman on Set-offs, 631.) The avails of the grain belonged to Gutchess & Yawger; it was not a debt, and defendants could not appropriate it without permission. (*Ostell* v. *Brough,* 24 How., 274; *Frost* v. *McCarger,* 14 id., 131; *Howe* v. *Savery,* 49 Barb., 403.)

*Miller & Hawley* for the respondents. The property vested in defendants upon its delivery to the carrier. (*Gros Vendor* v. *Philips,* 2 Hill., 147; *Holbrook* v. *Wright,* 24 Wend., 169; *Anderson* v. *Clark,* 2 Bing., 20.) Defendants have a legal right to set-off the prior indebtedness. (7 Pick., 214, 220; *Downer* v. *Eggleston,* 15 Wend., 51; Barb. Law of Set-offs, 93, 109, 137; *McGillivny* v. *Simpson,* 2 C. & P., 320; 9 Dowl. & Ry., 35; Waterman on Set-offs, 638, § 579, and cases cited; 2 Par. on Con., 248, 249; *Lovett* v. *King,* 16 Ind., 464; *Elard* v. *Karr,* 1 East, 375; *Cornfortt* v. *Rivett,* 2 M. T., 510; *Mayer* v. *Nias,* 8 Moore, 275; 11 Brigham, 311; Code, §§ 150, 274; Waterman on Set-offs, etc., 359, §§ 305, 306; Code, § 129, sub. 1; 7 Pick., 214, 220.)

ALLEN, J. This case presents but a single question, and that is, whether a party can be deprived of the legal right of set-off by an agreement deliberately made upon a good con-

sideration. The right of set-off in the case of cross-debts is given by law for the benefit of parties having mutual dealings, and to avoid a multiplicity of actions. It is a proceeding by which equity can be done between suitors at law. But like every other benefit or privilege conferred by law, it may be waived by the party entitled to it. In courts of law, a defendant may set-off any claim which he has against the plaintiff, which is within the statute of set-off, or bring an independent action, at his election.

The general doctrine, that an individual may waive any statutory or constitutional provision intended for his benefit, is well settled. (*Embury* v. *Connor*, 3 Comst., 511; *Kimball* v. *Munger*, 2 Hill, 364.) The right to set-off is not an exception to the general principle. All that the party waiving the right to set-off a demand against the claim of the plaintiffs, in an action in which it is allowable, or omitting to exercise it, loses, is that one remedy for the collection or satisfaction of his debt. There is nothing in the policy of the law to require a creditor to collect his debt, or enforce a claim against his debtor in any particular manner, or at the first opportunity, and there is nothing unusual or against public policy in the waiving of the right of set-off, whether done voluntarily or pursuant to an agreement made upon a good consideration. The case is a simple one.

The plaintiff's assignors were debtors to the defendants, the result of their commercial dealings, in a large sum past due, and were embarrassed in their circumstances, and unable to pay, or even, as it would seem, to continue business. It was for the interest of both debtors and creditor that the former should be enabled from their future earnings to pay off their indebtedness, but to do this, they must have a credit, and be enabled from their earnings to support themselves and families and devote a share of the profits of their business, if a profit should be realized, to purposes other than the payment of their indebtedness to the defendants. Their credit was to be kept good, or re-established with others, and both debtor and creditor might well look, in making an arrangement, to

the substantial business interests of the debtor, as well as to the payment of a single debt. An arrangement was accordingly made by which, upon being secured against losses, the defendants undertook to make advances upon the purchase of produce, by their debtors to the amount of its cost, to be consigned to them for sale on commission, and they to receive the usual commission upon the sale, and to be entitled to apply one-half of the net profits to the payment of their debt, and pay the other half to the consignors, their debtors, expressly agreeing that they would not retain but one-half, or seek to set off their debt against the other half. The consideration for the agreement was sufficient in the law. The commissions and their earnings in the business, and interest upon the advances, was a sufficient consideration, aside from the additional security they got upon the services and labor of the debtors and their future earnings. It was certainly an agreement which, as honorable men, the defendants should have kept. It is true that they allege a violation of the agreement by the debtors as an excuse for their disregard of their undertaking, but the referee has not found this allegation true, and the evidence does not satisfactorily establish it. The sole question with us, however, is as to the legal effect of the arrangement rather than the honorary obligations resulting from it. The mutual promises and the benefits secured to the defendants constituted an ample consideration to support any lawful undertaking that they might have assumed as a part of the agreement. It certainly was sufficient to hold them to a performance of every part of it, unless the promise not to retain one-half of the profits to apply on the old debt is an exception.

The court, in *Eland* v. *Karr* (1 East., 375), regarded a similar contract valid, so as to entitle the promisee to damages sustained by not receiving the ready money as promised. Unless the authorities are decisive to the contrary, a party should be held estopped by his solemn agreement made upon a sufficient consideration from asserting a privilege or right which he may lawfully waive in a matter not affecting public

interests or policy. If the defendants have induced the assignors of the plaintiff to enter upon a course of action, and engage in a commercial adventure for the mutual benefit of both, and to assume the risks and undertake the labor incident to it, upon the faith of their promise to do or forbear an act lawful in itself, they should upon principle and within well-established rules be estopped from taking action inconsistent with their promise, to the prejudice of the promisee.

An early case which has been supposed to bear upon the question is *Atkinson* v. *Elliott* (7 T. R., 374), and involved the right of set-off as against assignees in bankruptcy. The bankrupt was indebted to the defendants in two amounts, payable at different times. After the first debt became due he lodged in the creditors' hands a bill of exchange for a larger sum, which would become due before the second debt would be payable, and took from the creditors a promise to pay the difference between the bill and the first debt, when the bill should be paid. After the payment of the bill to the defendants, and before the second debt became due, the debtor became bankrupt, and the court held that the creditor might retain the surplus of the bill to satisfy the demand on the bankrupt lastly becoming due. It was decided upon the statute (5 Geo. II, ch. 30, § 28), authorizing in case of bankruptcy a set-off, where there are either mutual credits or mutual debts between the bankrupt and any other person, and upon the authority of *Ex parte Prescot* (1 Atk., 230), in which no question akin to that made here was involved. The court did not pass upon the effect of an agreement not to claim a set-off as between the parties, but adjudicated the rights of the parties under the bankrupt acts. There was no express promise not to set off the one debt against the other, although the parties only contemplated a provision for the debt first becoming due, and at the time of the bankruptcy and the commencement of the action by the assignees the second debt which was set off had not become due, and the set-off would not have been allowed between the original parties. *Eland* v. *Karr* (1 East., 375) is the leading case, and that upon

the authority of which the subsequent cases relied upon by the defendant were decided. That was assumpsit for goods sold and delivered to be paid for on request. Plea, a set-off upon various bills of exchange, and for money had and received. Replication, that at the time of the sale it was agreed that the defendant should pay for the goods in ready money. To this replication there was a demurrer upon which judgment was given for the defendant. The court decided that at the time of the commencement of the action there was a debt due from the plaintiff to the defendant capable of being set off under statute. (2 Geo. II.) All the court say, bearing upon the question presented here, is, that "the form of the plea was an order to set off and allow out of the debt due to the defendant, so much as the damages sustained by the plaintiff, assented to by the defendants, not performing his promises, and in estimating the plaintiff's damages in this case, the jury would take into consideration the loss he had sustained by non-payment of the ready money." It was of this case that Lord ELLENBOROUGH, Ch. J., said: "I defer to the authority, but am not convinced by it." (*Fair* v. *McIver*, 16 East., 130.) In the case last cited, which was by the assignees of a bankrupt to recover for goods sold, to be paid for on delivery, the set-off of a bill of the bankrupt was disallowed, for the reason that the defendants did not hold it in their own right. The same judgment that was given in *Eland* v. *Karr*, might have been given for the reasons assigned for a like judgment in the subsequent cases of *Cornforth* v. *Rivett* (2 M. & Sel., 510) and *Hogan* v. *Shorb* (24 Wend., 458), to wit, that the seller of goods to be paid for in cash on delivery, by parting with his goods without receiving the money, waived the condition. He had the remedy in his own hands, and was not obliged to part with his goods until the price was paid. It was not the case of an agreement respecting cross debts. *Mayer* v. *Nias* (1 Bing., 311) was the same in principle as *Cornforth* v. *Rivett.* It was a sale of goods for ready money, and the purchasers paid for them by delivering to the seller's agent a dishonored bill of the vendor, which the seller at first refused

to take, but which he afterward took and kept; and it was under these circumstances that the assignees in bankruptcy of the seller were not allowed to recover for the goods. In the cases already referred to there was no promise or agreement looking to mutual credits, nor an agreement not to set off one debt against another. The transaction did' not contemplate the creation of a debt upon the one side, but for payment at the time of. the delivery of the goods. The later case of *McGillivray* v. *Simson* (2 C. & P., 320) was somewhat different in its circumstances, but went off on the authority of *Eland* v. *Karr*, *Cornforth* v. *Rivett*, and *Mayer* v. *Nias* (*supra*). It was an action by the assignees of Inglis and another, bankrupts. The bankrupts, under the firm name of Inglis & Co., were indebted to the defendant in the sum of £418 4*s.* 2*d.*, and, as successors of the firm of Inglis, Ellice & Co., they owed him £1,844 7*s.* 5*d.*, and were insolvent. Being so indebted, they consigned certain timber to the defendant for sale, upon his undertaking to account for and pay over the proceeds of the sale without deducting therefrom the sums of money, or either of them, so due to him. Chief Justice Abbott, at *nisi prius*, held that the promise not to set off the new debt was not binding, but that the debt of the old firm could not be set off. On being reminded that the latter debt had been assumed by, and was the debt of the new firm, the chief justice said that if it were so, the two promises must be set against each other, and the parties left to their legal rights; and that, by the old rule, the debt of three could not be set off against two. A technical rule was allowed to prevail against the equitable rights of the party contending with assignees in bankruptcy, to the end that a promise made upon a good consideration might not be entirely without effect. A rule *nisi* for a new trial was refused solely on the authority of the cases before referred to, which were entirely dissimilar in their circumstances, and governed by a different principle.

The equity case of *Taylor* v. *Okey* (13 Vesey, 180) was decided in deference to the opinion of Lord Kenyon in

*Lechmere* v. *Hawkins* (2 Esp., 626), but not in harmony with the present rule in equity, which will not, in all cases of cross-demands, allow a set-off; but only when equitable ground can be shown for protection against his adversaries' demand. (Story Eq. Jur., § 1436.)

A single case in our own courts needs to be referred to. (*Downer* v. *Eggleston*, 15 W. R., 51.) The marginal note by the reporter justifies the claim made by the defendant in this action, but it is not supported by the case and the prevailing opinion of the chancellor. The action was upon a written instrument, by which the defendant agreed to account for certain timber belonging to the plaintiff if he should dispose of it to the full amount of the proceeds, deducting charges, etc. The defendant pleaded the general issue, with a notice that he would prove that the plaintiff had agreed that the proceeds of the lumber should be applied to the payment of a bond of the plaintiff, held by the defendant. On the trial the defendant gave evidence tending to prove the agreement as alleged; and the plaintiff gave evidence inconsistent with that given in behalf of the defendant. The circuit judge held that the bond could not be set off against the claim of the plaintiff under the statute of set-off; but if the agreement was made as alleged by the defendant it should be allowed, and submitted that question to the jury who found against the defendant. On a motion for a new trial the Supreme Court held that the circuit judge erred in his construction of the statute, and that the bond was a proper set-off in the action; but refused a new trial on the ground that the jury necessarily found that an arrangement had been made by which the lumber was not to be applied to the payment of the bond. Upon a writ of error to the Court for the Correction of Errors the chancellor gave the prevailing opinion, and, after citing some of the English cases with approval, refers to the fact that the alleged agreement was made, if at all, before the first installment upon the plaintiff's bond, sought to be set off, had become due; that the plaintiff was under the same obligation to pay his bond at the time appointed as the

defendant was not to apply the avails of the lumber, and that the law knew no difference in the obligation of one party to keep his promise more than another. He intimates, however, that if there was some subsequent agreement between the parties that the plaintiff should not be required to perform his engagement, as contained in the condition of the bond, it might be different, and says that it was not pretended that there was any such agreement either express or implied. He further says: "It is not alleged that at this time (in December when the accountable receipt was given) there was any agreement, if the timber was not sold and the money received before the bond became due, that the money should be paid over to the plaintiff, leaving the installment due to the defendant on the first of January unpaid." He shows very clearly that such is not the legal effect of the undertaking of the defendant as expressed in the receipt, and rests his opinion upon this branch of the case, that this receipt was the consummation of a new arrangement, and superseded a former agreement in which it was claimed the agreement not to apply the proceeds of the lumber upon the bond was made, and that in fact there was no agreement which forbid the set-off. This opinion was concurred in by the president and fourteen senators. Eleven senators were for an affirmance of the judgment of the Supreme Court, upon the ground taken at the circuit, that a set-off was not admissible in the action. The case is not an authority upon any question presented by this appeal, except as the opinion of the Supreme Court upon the abstract proposition in favor of the plaintiff here, and the intimation of the chancellor that in a case like this a valid agreement might be made not to set off a demand against the plaintiff's debt. Here the debt of the plaintiff's assignors to the defendants was past due at the time of the agreement, and their promise had already been broken, and the arrangement necessarily contemplated their inability to pay at any particular time in the future, and that indulgence was to be given; and that the debtors should, to a limited extent, have the benefit of their

earnings which should come to the defendants' hands, free of all claim of the latter to apply them upon their debt. But we have a direct authority adverse to the claim of the defendants, and the effect claimed from the English cases in *Henniss* v. *Page* (3 Whar., 275), approved in *Louden* v. *Tiffany* (5 W. & S., 367). The decision is well expressed in the syllabus of the case as follows : " In debt on bond by A., assignee of B., the obligee, against C., the obligor, it appeared that at the time of giving the bond a settlement was made, and releases executed, of all claims which A. and B. had against C., and which C. had against A. ; and A. having said, ' Now you will go and buy another judgment against me,' C. replied, ' I will not buy any judgment against you ; I will pay the bond when it becomes due.' Held that after this agreement, C. could not set off a judgment against B., which was assigned to him after the execution of the bond." The judge, in assigning the reasons for the judgment, reviews the cases cited to us, and is of the opinion that if in *Eland* v. *Karr* there had been an express agreement not to purchase and set off other claims, the decision would have been different, but irrespective of that consideration, he said the court was neither trammelled by the authority, nor convinced by the reasoning of the cases cited. He was of the opinion that " a court of justice was never better employed than in sustaining the principles of good faith, and in discountenancing fraud or breach of contract." The plaintiff here stands in the place of his assignors, who were probably compelled to make the assignment to avail themselves of the provision for their necessities, which they had expected and were entitled to receive from the defendants.

The exclusion of the evidence offered to prove the circumstances attending the withdrawal of Houghtaling from the employ of Gutchess & Yawger was not erroneous, and the evidence, if it had been admitted, could not have varied the result. Houghtaling was the mere clerk and agent of Gutchess & Yawger, and had no interest in the business as a partner or otherwise. The retention of his services by Gutchess &

Yawger was no part of the contract, and his agency was not necessary to the substantive performance of the agreement by the contrary parties.  The only effect claimed now for the offered evidence is, that it would have tended to prove a complicity of Gutchess & Yawger with Houghtaling in a breach of the contract, but the answer to that is, if it should be conceded that such would be the tendency of the evidence, which is not very apparent, that the referee has not found any such agreement as is claimed by the defendants, and therefore there could be no breach.

The order of the Supreme Court, granting a new trial, must be reversed, and the judgment on the report of the referee affirmed.

All concur, except FOLGER, J., not voting.

Order reversed and judgment accordingly.