## H. C. HICKS ET AL. v. C. G. FAUST ET AL.

Motion No. 4496. Application No. 10675. Delivered May 16, 1919.

**Materialman's Lien—Owner—Notice—Dissenting Opinion.**

In an action to recover the price of materials furnished for erection of a building and to foreclose statutory lien thereon, the Supreme Court refusing a writ of error on judgment awarding such foreclosure, Mr. Justice Hawkins, dissents, on the ground that the party to whom the materials were furnished under facts therein disclosed, could not be considered the owner of this property within the meaning of the statute (Rev. Stats., arts. 5621 and 5622 and 5623), but a mere contractor; and that the facts proven did not show notice of this claim, given as required by the statute if furnished to the contractor. (Pp. 482-510.)

Vol. 109-31.

Motion for rehearing on an application for writ of error.

Faust and another brought this suit against Brown for price of lumber furnished him to erect a building on the property involved; and joined as defendants Hicks and others, trustees of church property on which it was sought to establish a lien under the statute for such debt. On trial judgment was for the debt claimed, but the lien was denied. Plaintiffs appealed and the Court of Civil Appeals rendered judgment both for the debt and foreclosure of the lien (Spencer & Co. v. Brown, 198 S. W., 1198). Hicks and others, the trustees of the church property, applied for writ of error, and on its refusal, per curiam, filed a motion for rehearing. This was refused, per curiam, without written opinion, Mr. Justice Hawkins filing the dissenting opinion following.

*Chandler & Pannill,* for applicants Hicks et al.

*Hickman & Bateman* and *Lattimore, Bouldin & Lattimore,* for appellees.

Mr. Justice HAWKINS dissenting.

Out of five hundred and sixty-one cases in which, during our present term, this court has disposed of applications for the writ of error, this case is one of the five in which I have felt duty bound to dissent from the action of this court upon such application, two of the five being cases in which I thought the writ ought to have been refused on the merits, instead of the petitions for that writ being dismissed, as they were, for want of jurisdiction in this court.

The judgment of the Court of Civil Appeals for the Eighth Supreme Judicial District (198 S. W., 1179), foreclosing the asserted materialman's statutory lien upon the church's "rock building," although approved by a majority of this court, appears to me to be seriously erroneous; hence my dissent, heretofore, to the order of this court refusing the writ of error, and my present dissent from its order denying a rehearing.

My three-fold reasons for such dissent are as follows:

First. When the material for repair of said rock building was furnished to and used by Brown for that purpose he was not the statutory "owner" of that building; nor did he own the land on which it stood. When carefully analyzed his status, as to the church, and also as to the materialman, was, merely and simply, that of a "contractor." R. S., arts. 5621-3.

Second. No statutory "notice" of the furnishing of said material,—and, indeed, no notice whatsoever—has been shown to have been given by said materialmen to the church trustees prior to payment to Brown, by said church trustees, of the full contract price for making said repairs, which payment they made long before the claim of lien was filed in the county clerk's office.

Third. The decision of the Court of Civil Appeals in the present

case is in conflict with several prior decisions of this court, and with several prior decisions of various Courts of Civil Appeals.

Said judgment of foreclosure involves what I consider material and grave misconceptions of the facts and of the law of this case, in these particulars:

(a)   With regard to the legal effect of R. S., art. 2873, relating to "consent" of the State Board of Education to sales of school property within its operation.   (b)   With regard to the proper construction and legal effect of a certain "consent" resolution by said State Board, as related to an antecedent contract by the school trustees for sale of property belonging to the independent school district and formerly used for public free school purposes.   (c)   As to whether statutory "notices" of the furnishing of said material were given prior to full payment, by the "owner," of the contract price for said repairs.

Those misconceptions concerning art. 2873, and those concerning said resolution, are material, particularly, in all respects in which that statute and that resolution were applied by the Court of Civil Appeals to Brown's previously executed contract with the school trustees, by the terms of which he was to acquire said building only, *as personalty,* from the independent school district, and remove it from the land.

That the judgment and opinion of the Court of Civil Appeals do involve such misconceptions concerning art. 2873, and concerning said resolution, is more apparent when said contract is considered in connection with Brown's subsequent written contract with the trustees of said church, whereby, conditionally, he agreed to complete and fit up said rock building and to turn it over to said church for its use, and with the still later contract between the church trustees and the school trustees whereby the latter agreed to convey to the former the tract of land upon which said rock building stood, both of said contracts having been executed prior to the inception of what may be termed *the repair period,* during which said material was furnished for and used in repairing said rock building, and both contracts having been carried, later, into full effect and completely performed.   Those misconceptions concerning the giving of statutory notices are material in that said judgment fastens a materialman's lien upon said rock building in the hands of its present legal and equitable owners, although, *seasonably, and without statutory "notice,"* they paid their contractor in full for repairing that building.

The logical consequence of that judgment of foreclosure, is, under the facts, to overturn a long line of what have been regarded, generally, as well settled decisions of this court and of various Courts of Civil Appeals of this State construing and applying our materialman's statutes—a consequence which, I feel sure, was not intended, in this instance, by the Court of Civil Appeals or by my associates.   Such, as I understand it, is this case, in outline.

The essential facts are these:   Spencer & Company, as materialmen, sought, in this action, a personal judgment against Brown, for a debt

incurred by him for building material supplied by them to him, for repairing said rock building, and against Brown and the Bosque Presbyterian Church, U. S. A., a corporation, and its trustees, Hicks, Howard and Knight, as "owners" of said building, for foreclosure of an alleged constitutional and statutory materialman's lien upon that building and the two and one-half acres upon which it stands, in the town of Lingleville, which, it seems, comprises, or is within, the Lingleville Independent School District. Said school district formerly owned a tract of land containing ten acres and embracing a smaller tract of two and one-half acres upon which said rock building stood. Without previous consent of either the State Board of Education or the County Commissioners' Court for any sale or disposition of any of said property, the trustees of said district, on August 8, 1914, entered into a written contract with Brown, a building contractor, by the terms of which he was to erect, for said district, an "addition" to a school building standing on another tract of land, in consideration of which addition he was to receive, among other things, said rock building, which he was to remove from the land. If Brown made said addition to the other building, that fact, and the times when he began and completed it, are not satisfactorily shown by the record; and said rock building was never physically severed from the land, nor was it ever conveyed, by deed, to Brown.

However, in August, 1914, after the eighth day of that month, yet prior to the beginning of said repair period, said church, through its trustees, entered into two contracts relative to the *ownership* of said rock building, one being with Brown, and the other with said school trustees. That contract with Brown was conditioned that if the church could acquire from said school district said smaller tract of land, Brown, for a stipulated consideration, would repair that rock building and turn it over to the church for its use. Said other contract was one whereby said school trustees agreed to convey said smaller tract of land to said church trustees. Both of these contracts were fully performed.

On September 28, 1914, the repairs on said rock building having been practically completed, that building was turned over by Brown to, and was accepted by, the church trustees, who, thereupon, and on or about that day, paid to Brown the unpaid residue of the entire contract price for making said repairs. Not until long afterward did the materialmen give to said church trustees any character of "notice" concerning the material used by Brown in making said repairs.

On October 19, 1914, the State Board of Education, which had never consented to any trade or sale or contract affecting disposition of said ten acres or any part thereof, or of said rock building, adopted the following resolution, which, it seems, all parties and the Court of Civil Appeals have treated as embracing said smaller tract of two and one-half acres upon which stood said rock building:

"Resolved by the State Board of Education of Texas that permission is hereby granted to the Board of School Trustees of Lingleville Inde-

pendent School District to sell to the highest bidder for the purpose of investing the proceeds in more convenient and desirable school property the following described property: 'All or any part of a ten-acre tract of land, known as the old school ground, for the purpose of investing the proceeds in more desirable school property.'"

Subsequently the trustees of said school district executed and delivered to the trustees of said church a deed to said two and one-half acres of land, impliedly including said rock building. Said deed bears date of October 31, 1914, and, presumably, was delivered then. From and after that date, admittedly; and even under the averments of plaintiff's amended petition, the full equitable and legal title to said smaller tract and to said rock building thereon has been in the trustees of said church. On November 27, 1914, said claim of lien was filed—apparently against said church trustees and against Brown. Certain additional facts relative to the giving of "notice" will be stated below in their proper connection.

Upon trial of the case, without a jury, the District Court rendered a personal judgment against Brown for the value of said building material, with interest, but did not establish or foreclose any lien. In that judgment I find no error. Said Court of Civil Appeals affirmed said personal judgment, but rendered judgment against all defendants, establishing and foreclosing, in favor of said materialmen, their alleged statutory lien against said rock building only, and ordering it sold in satisfaction of said personal judgment.

Of that judgment the foreclosure feature, which, alone, is drawn in question here, is, I think, demonstrably erroneous, for reasons herein stated. The purpose of the petition for the writ of error was to obtain from this court, under circumstances permissive of oral argument, a full review of that judgment of foreclosure and a written opinion on the law of the case. To that much, at least, petitioners for said writ are, I think, entitled, on the record in this case.

That what is known as the "rock building" had been so far demolished, prior to said repair period, as that it no longer constituted a "building" within the meaning of arts. 5621-3 is contended by plaintiffs in error; but that contention, involving an issue of fact only, is without merit here, the Court of Civil Appeals having treated the structure as constituting a *"building,"* and there being in the record supporting evidence.

To secure payment for material furnished for the repair of "any building or improvement" under or by virtue of a contract with the "owner," or with his "contractor," our statutes provide for a lien thereon and on the lot or lots of land necessarily connected therewith. When such contract is with such "owner" the materialman is not required to give him "notice" of the furnishing of the material; but when such contract is with such "contractor" the materialman is required to give to the "owner," or his agent, "written notices" of *each such item as it is furnished.* R. S., arts. 5621-3.

Upon the issue of *ownership*, what was the relation of Brown, and what was the relation of the church trustees, to the rock building, at the beginning of and throughout said repair period, covering, as herein defined, the furnishing of said material and the making of said repairs? That question goes to the heart of this whole controversy.

Was Brown such statutory "owner" of that building during said period of time? If so, said materialmen are entitled to have the lien asserted by them foreclosed on that building; but if, at the beginning of and during said period, Brown was not, at any time, such owner of that building, said materialmen clearly are not entitled to any lien in the premises.

Under what, if any, title, or by what, if any, right or tenure, may it fairly be said that at any moment during said repair period, and within contemplation of articles 5621-3, Brown was the "owner" of the rock building? None; or, at least, my search for it has been in vain.

If said rock building should be treated *as continuously a part of the realty,* then, clearly, said claim of lien against Brown, as "owner," should not be upheld, because, under that assumption, the legal "owner" of said building down to October 31, 1914, the date of said deed to the church, was the school district, and, afterward, was the church, neither of which was a party to the agreement between the materialmen and Brown under which said material was furnished to Brown. As to the school district, no claim of lien against it was filed; and, as a sidelight, it may be added that R. S., arts. 2844-5 inhibit the fixing of a lien upon a public school building for erecting it. Such is the general policy of our law concerning such liens on such public school property.

But what was the nature and status of that which the Court of Civil Appeals treated as the "inchoate" or "equitable" title of Brown in and to said rock building, as related to the entire issue of *ownership* of that building during said repair period? That is the crux of the theory upon which the Court of Civil Appeals decided this case.

Under the facts, that matter has *two distinct phases;* first, as made up by said written contract between Brown and the school trustees and said subsequent "consent" resolution of the State Board of Education, and any and all things done in furtherance and fulfillment of that contract; and, second, as made up by all the facts shown in the record, and, more particularly, as affected by said contract between the church trustees and the school trustees, and said deed. That first phase, upon which, principally, rests said decision of the Court of Civil Appeals, appears to have received, at its hands, extended, though erroneous, consideration and treatment; but the other phase, which I consider of great and even controlling importance, seems to have received but scant consideration and treatment, the Court of Civil Appeals having disposed of the case on the theory that Brown was the owner of said rock building.

The theory of that court appears to have been that, under the facts, and particularly by virtue of said contract between Brown and the

school trustees, there was a constructive "severance" of that building from the realty, taking said building, in the absence of a deed thereto from the school trustees to Brown, out of the operation of the rigid rules of law for determining the ownership of the legal title to real property, and that, by virtue of that contract, and from its very inception, Brown became and was, throughout said repair period, the statutory "owner" of that building; citing 11 R. C. L., 1066; 19 Cyc., 1070; Johnson v. Phila. Mfg. & Tr. Co., 129 Ala., 515, 30 So., 15, 87 Am. St. Rep., 75.

It must, I think, be conceded that, abstractly, and as related to the mere matter of the sale of property, the general doctrine of "severance" so announced and the authorities therein cited by said Court of Civil Appeals, are, indeed, applicable, ordinarily, to transactions between or among parties all of whom are acting in the unrestricted, unconditional, and untrammeled exercise of all rights of ownership and sale of property, when such contracts are fully executed, subsequently, but in my opinion, neither that principle nor those authorities are applicable, in this State, to such a contract for the sale of a building *owned by an independent school district* (whose powers of disposition of school property seem to be narrowly and quite rigidly restricted by law), and especially so when such contract is not shown to have been fully executed. R. S., art. 2873, which was held by the Court of Civil Appeals to be applicable (and perhaps correctly so), is as follows:

"Any houses or lands held in trust by any city or town for public free school purposes may be sold for the purpose of investing in more convenient and desirable school property, *with the consent of the State Board of Education,* by the board of trustees of such city or town; and, in such case, the president of the school board shall execute his deed to the purchaser for the same, reciting the resolution of the State Board of Education giving consent thereto and the resolution of the board of trustees authorizing such sale."

Under that statute the following questions suggest themselves:

Is a trade or sale of school property, by trustees of an independent school district, made prior to and in the absence of such "consent" of the State Board of Education, void, or merely voidable? As to that feature, is said statute mandatory, or merely directory? Does the power of the trustees to sell such property exist in operative form, vitality, and force, independently of such action by the State Board of Education, and *continuously,* so that art. 2873 justly and fairly may be treated, construed and applied in practice, as affecting simply and merely the manner of exercising *an already existing power of sale,* resting, for authority, in operative vigor, *wholly* "in the law," in contradistinction to *conferring or making operative that conditionally granted power* itself? (See Kampmann v. Tarver, 87 Texas, 491, 29 S. W., 768; Parks v. West, 102 Texas, 19, 111 S. W., 726; Thompson v. Bank [211 S. W., 977], and Davis, Receiver, v. Allison [211 S. W., 980], both decided by this court recently.) In brief, is such action

by the State Board of Education a condition precedent to the exercise, by the school board of an independent school district, of a qualified statutory right, power, and authority to sell such property? Concretely, under the law and the facts of this case, the following questions are presented for determination: Was said August contract between the school trustees and Brown, whereby, alone, if at all, he was to acquire said rock building, *null and void, ab initio,* because in contravention of art. 2873, supra, and, consequently, not the subject of subsequent ratification by the State Board of Education, or was that contract merely irregular and, at the worst, merely voidable, and, therefore, susceptible of such ratification? And, if it should be held that such contract was, in law, susceptible of such ratification, was the phraseology of said October resolution of that Board such as to make it, in law, a ratification of said first August contract, retroactively perfecting, in Brown, as of a date prior to the beginning of said repair period, during which said material was furnished to him, statutory *ownership* of said rock building? And if said "consent" resolution did, indeed, have such ratifying and curative effect, did it not, also, and *simultaneously,* ratify and confirm, as well, said two antecedent but later August contracts, which, also, were *of dates prior to said repair period* and constituted a three-cornered agreement, to which Brown and the church trustees and the school trustees were parties, by the terms of which the church was to acquire, and by which, in connection with said subsequently adopted "consent" resolution and said later deed thereunder, the church ultimately, and before the filing of said claim of lien, did admittedly acquire, the full equitable and legal title to said smaller tract of land, including the rock building?

Upon these somewhat complex questions there seems to be no direct previous decision of this court or of any of our Courts of Civil Appeals. (But see Crouch v. Posey, 69 S. W., 1001.) The wide operation of said art. 2873 upon a vast amount of school property in this State and the novelty and complexity of those questions together entitle them, or most of them, it seems to me, to very thorough consideration, and final and formal decision, by this court, in a written opinion.

Conceding, for present purposes, that the Court of Civil Appeals was right, as probably it was, in holding that the provisions of said statute relative to making, in such deed, recitals of the two required resolutions concerning the sale of such property are directory only, and not mandatory, and that failure to incorporate such resolution in the deed to the land did not nullify such conveyance, there remains the vital question as to the legal effect of the statutory provision that such sale may be made "with the consent of the State Board of Education."

The entire power and authority of local school boards within the operation of art. 2873 (including, perhaps, all independent school district boards) appears to rest on that statute. Another fact, which I consider of significant importance in this case is that, *along with that grant of power,* the statute expressly couples the clear and specific pro-

vision, in the nature of a restriction or limitation upon that granted power, that such sale shall be "with the consent" of said State Board. That, I think, not only plainly negatives the idea that such local Board may dispose of such school property purely at its own discretion, but requires, by necessary implication, that "consent" of said State Board shall be essential to the validity of any attempted sale of such school property, and as well, to the validity and enforcibility of any contract, by such local board, involving disposition of title to or *ownership* of any such property.

In discussing a power created by an individual, the Supreme Court of Tennessee said:

"The general rule of law, unquestionably, is that, where a special power of sale is given, to be exercised upon the happening of a certain event, made a condition precedent, it can be executed only in the mode, at the time, and upon the conditions prescribed in the instrument creating it, and the purchaser must, at his peril, ascertain whether the contingency upon which the sale is authorized exists. . . . But the rule only applies where the condition upon which the power is to be exercised is upon the happening of a certain event or independent fact, such as majority or marriage of some one named, which may be ascertained by anyone with equal certainty." Matthews v. Capshaw, 109 Tenn., 480, 97 Am. St., 854, 72 S. W., 964. See, also, Hay v. Mayer, 8 Watts (Pa.), 203, 34 Am. Dec., 453, 21 R. C. L., 782; Towles v. Fisher, 77 N. C., 437; Goebel v. Thieme, 85 Wis., 286, 55 N. W., 706.

Article 2873, in conferring power to sell, does not leave to the local school boards within its operation final discretion, but, on the contrary, expressly confers on said State Board of Education ultimate discretion to determine whether the proposed sale is advisable; and whether or not such requisite consent of the State Board to the proposed sale has or has not been given by resolution is a fact easily susceptible of definite ascertainment by the prospective purchaser of the school property.

"Where the consent, request, or approval of any person is required to the execution of a power of sale or exchange, it constitutes a limitation upon the power, which, like every other condition, must be strictly complied with." 31 Cyc., 1083, note 47, citing numerous cases.

I can not now see any good reason for not applying this same rule of construction to such statutory powers as that here under review. That seems to have been the conclusion of Mr. Endlich as reflected in his work on Interpretation of Statutes, secs. 352-3, wherein it is said: "Powers delegated to subordinate local authorities are strictly construed, and any reasonable doubts as to the existence of a particular power resolved against the same (citing Paine v. Spratley, 5 Kans., 525). . . . As to statutes generally, conferring powers, it may be said to be the result of the vast number of decisions upon the questions arising under such enactments, that "a purely statutory authority or right must be pursued in strict compliance with the terms of the statute." Citing Bish. Wr. L., 119.

From its context, art. 2873 certainly contemplates, at least, that such "consent," in the form of a resolution, shall be given *prior to such sale.* Supporting that view, and emphasizing that legal effect of the statute, are the quoted provisions that such deed shall embody both the resolution of said State Board giving "consent" to such sale, and the resolution of the local school board authorizing such sale. The cardinal and controlling rule of statutory construction is to ascertain and give effect to the legislative will. Obviously, it seems to me, art. 2873 was designed rigorously to safeguard, restrict, and limit the disposition of school property falling within its terms, and to make formal consent thereto by the State Board of Education, *given in advance,* an absolute necessity,—a condition precedent—to any valid and enforcible disposition, or contract for disposition, of any such school building or land. I believe that said statute should be so construed and applied, in practice, so long as it remains on our statute book. Its public policy is not the subject of judicial concern. "Courts sit to administer the law fairly, as it is given to them, and not to make or repeal it." Schlaudecker v. Marshall, 72 Pa. St., 200. The contrary view as to the effect of that statute defeats, I think, its contemplated purpose and legal effect. To say that, despite the strong, unambiguous, and inelastic provisions of art. 2873, local school authorities within its operation may, without prior consent, approval or knowledge of the State Board of Education, sell or convey school land, or trade or sell a building standing on such land, severing it from the land, or even validly and bindingly contract for the disposition of such property, renders such statute practically nugatory and mocks the law as the Legislature, whether wisely or unwisely, solemnly has written it.

Much reason, and many eminent authorities, may be adduced in support of the view that, for lack of such antecedent consent of the State Board of Education, said contract between the school trustees and Brown, whereby he was to acquire said rock building, was absolutely void, from its very inception, and, consequently, was not susceptible of ratification by said State Board. In construing Pas. Dig., art. 1052, this court, through Roberts, C. J., said:

"Although this statute is permissive in its terms, yet it is the only mode expressly pointed out in the general laws of the State by which the County Court can divest the county of its title to its real estate. No special law, as applicable to this particular case, has been referred to. The general doctrine is, that as the County Court is the agent of the county, in its corporate capacity, it must conform to the mode prescribed for its action in the exercise of the powers confided to it. The prescribing of a mode of exercising a power by such subordinate agencies of the government has often been held to be a restriction to that mode"; citing authorities. Ferguson v. Halsell, 47 Texas, 421.

Certain attorneys, pursuant to employment by the mayor of the city of Bryan, rendered him an opinion concerning the validity of an election of municipal officers, of which the city council subsequently availed

themselves. In a suit by the attorneys against the city for the value of their said services this court, through Gould, J., said:

"The charter gave the power to employ legal counsel, but prescribed that the power be exercised by, or at all events in accordance with, an ordinance of the common council. The charter—the source of all the power of the mayor or council over the subject—having limited the mode of its exercise, they could not in a different mode make a valid contract; nor could they by any subsequent approval or conduct impart validity to such contract. . . . If municipal corporations can be held liable on an implied contract where the charter has withheld the authority to make an express contract, it is easy to evade and render useless such restrictions in their charters. The claim of plaintiffs, that the city of Bryan was bound to pay them because of their employment by the mayor and because of the use made of their opinion by the common council, can not be maintained. They were bound to know of the limitations on the authority of these officials, and their services were rendered at their own hazard. (Zottman v. San Francisco, 20 Cal., 105, 81 Am. Dec., 96; Bladen v. Philadelphia, 60 Penn. St., 464; City of Leavenworth v. Rankin, 2 Kan., 357; 1 Dill. on Mun. Corp., sec. 373.)" City of Bryan v. Page, 51 Texas, 533, 32 Am. Rep., 637. See, also, Noel v. City of San Antonio, 11 Texas Civ. App., 580, 33 S. W., 263; Allen v. Franks, 166 S. W., 384; Head v. Ins. Co., 2 Cranch, 127.

In Matagorda County Drainage Dist. No. 1 v. Gaines & Corbett, 140 S. W., 370, which was a suit by attorney on a contract with the County Commissioners Court which had not been approved by the county judge, our Court of Civil Appeals at San Antonio said:

"By the provisions of section 51 of the drainage act of 1907, the commissioners are empowered to employ counsel to represent the district 'upon such terms and for such fees as may be agreed upon by them and approved by the county judge.' It was clearly the intent of the Legislature to require as an essential the approval of the chief officer of the county; the official watchman of the county treasury undoubtedly by this requirement was made to safeguard and protect the fund that was raised by taxation of the inhabitants of a district, and to render more difficult the making of contracts which might squander a fund raised for the public good. The authority to contract for the services of attorneys is given by section 51 alone to drainage commissioners, and to that we must look to ascertain the mode of exercising the power. The law requires the approval of the county judge of contracts made by drainage commissioners for legal services. . . . It is the rule stated by Dillon, in his work on Municipal Corporations (5th ed.), sec. 783, and fortified by numerous authorities, that when the mode of contracting is specially and plainly prescribed and limited that mode is exclusive, and must be pursued, or the contract will not bind the corporation. The rule is a salutary one, upholding the legislative checks and restraints put upon the officers of municipal corpora-

tions, and strictly construing the powers conferred upon them in the disbursement of public funds. To hold that a contract made in a different mode from the exclusive one prescribed by the Legislature can be enforced would be to nullify and destroy the law, and to set up judicial discretion or judicial pleasures instead thereof. . . . The authorities cited, as well as various others, hold that, where the power of contracting is limited to a certain mode, the officers of a municipal corporation can not, in a different mode, make a valid contract; nor can they by any subsequent approval or conduct vitalize such contract; nor would the law imply such contract. Appellees were bound in making the contract to see that it conformed to the law, and the facts clearly show that they not only knew that the contract was not binding without the approval of the county judge, but that they used various means to obtain his approval, and endeavored to obtain a ratification of the contract by the new board of commissioners. As said by the Court of Appeals of New York, in Smith v. City of Newburg, 77 N. Y., 131: 'An absolute excess of authority by the officers of a corporation in violation of law can not be upheld; and, when the officers of such a body fail to pursue the strict requirements of a statutory enactment under which they are acting, the corporation is not bound in such cases, the statute must be strictly followed; and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective.' See, also, McDonald v. New York, 68 N. Y., 23, 23 Am. Rep., 144." In that case this court refused a writ of error.

Crouch v. Posey, 69 S. W., 1001, decided in 1902 by our Court of Civil Appeals at Dallas, involved the validity of a sale of school land owned by and in the city of Alvarado, without approval of the County Commissioners Court under art. 3990, now R. S., 2846. In the present case that statute has been held inapplicable, and perhaps properly so; nevertheless, it and art. 2873, supra, are very similar, as related to the here involved issue of statutory construction, in that, there, sales, by school trustees, of such property were to be by consent of the County Commissioners Court. There it was held by Judge Poindexter, in the District Court, that the purchaser "took no title" by his deed from said trustees, "as they had no power to sell as trustees, except by order of the Commissioners Court," and it was held, on appeal, that "no title passed by the deed from the trustees," and that the purchaser thereunder "is in the position of a naked trespasser," wherefore the school trustees recovered the land, although the purchaser had paid to them, in full, the entire agreed purchase price.

In Bates v. Leonard, 99 Mich., 296, 59 N. W., 311, a husband devised to his wife all his real estate, directing that if its rents and profits should prove insufficient for her support she might, under direction of the judge of probate, sell and convey, a portion of the land sufficient for her support. Held: "The provision was such a one as

could not be disregarded, and that the sale without the direction of the probate judge must be treated as void. Richardson v. Crooker, 7 Gray, 190; Kissam v. Dierkes, 49 N. Y., 605; Powles v. Jordan, 62 Md., 499." See, also, Kerbon v. Wooldridge, 184 S. W., 746, and cases therein cited. Numerous other supporting decisions from this and other courts might be cited.

But, whatever was the status of said contract between Brown and the school trustees, during said repair period, and, even if it be conceded, for present purposes, that said contract was not void, nevertheless, it was, to say the least, not only irregular, but flatly violative of both the spirit and the letter of art. 2873, and, consequently, as between Brown and the school district, was voidable and non-enforcible, from its incipiency. And that, be it remembered, unquestionably was its status *throughout said entire repair period.* Not until long after that period ended, and after said repairs had been made, accepted, and *fully paid for* by the trustees of the church, did the State Board of Education adopt any resolution whatever relating to said rock building or the land upon which it stood. Unless said "consent" resolution of October 19th related back to and validated, as of August 8th, Brown's contract of that date with the school trustees, that contract was never valid. On the other hand, that "consent" resolution, even if it did have that validating effect, and because of the two intervening contracts relative to ownership of said rock building, came too late to affect, materially, the present issue as to who was the statutory "owner" of said rock building during said repair period.

The opinion of the Court of Civil Appeals frankly concedes the irregularity of said contract between the school trustees and Brown, and its insufficiency, originally, to constitute him such statutory "owner" of said rock building, but plants its decision that he was such "owner" thereof, during said repair period, squarely and avowedly on the propositions (a) that said subsequently adopted resolution of the State Board amounted, in law, to a valid ratification of said prior contract between the local school board and their contractor, Brown, and (b) that, in the light of such validation, such contract must now be held to have been valid from its inception because it has been fully performed.

Relative to the status, during said repair period, of said contract between Brown and the school trustees, and to such assumed validation of that contract, the Court of Civil Appeals said:

"This resolution of the State Board of Education constituted sufficient authority to the board of trustees to pass title to the school building to Brown, but in this connection it will be noted that this resolution was adopted subsequent to the date of the contract between the school board and Brown. Since said contract of the State Board did not exist at the time of the contract with Brown, appellees contend that he did not obtain the title to the building and was therefore not the owner thereof so as to enable him to fix a lien thereon for materials furnished. We do not think that a deed to a house or land exe-

cuted by the board of trustees of an independent school district without the previously obtained consent of the State Board of Education would be such an absolute nullity as would preclude the application of the principle of ratification. Undoubtedly, however, it would be lacking in an essential necessary to its complete validity, viz., the consent of the State Board to the sale, but if such consent be subsequently obtained, then we are of opinion and hold that it would operate as a ratification of an act done without authority. In the instant case, the consent of the State Board of Education given in October, authorizing the Board of Trustees of the Lingleville School District to sell all or any part of the land, was sufficient to validate the contract of sale theretofore made betwen the board of trustees and Brown; it operated retroactively, and made the contract with Brown as effective as though it had been authorized previous to its making. It may be conceded that at the time the material was furnished to Brown by appellants, Brown's title to the house was lacking in complete validity because of the failure to obtain the previous consent of the State Board of Education, but he at least had an inchoate right or title to the property which was afterwards perfected, and he should be considered the owner of the building at the time the material was furnished within the constitutional and statutory provisions relating to materialman's liens. Cameron & Co. v. Truehart, 165 S. W., 58; Schultze v. Brewing Co., 2 Texas Civ. App., 236, 21 S. W., 163. . . . Here Brown's title was perfected by the resolution of the State Board passed subsequent to the furnishing of the material, and he, too, should be regarded as the owner of the building at the time the material was furnished, within the meaning of the statute, and it is so held."

Parenthetically, there are involved, in said quoted portion of said opinion, certain features which should receive mention in advance of a discussion of its ratification features. They are these: Brown's contract with the school trustees, whereby he was to acquire ownership of said rock building, is declared by the Court of Civil Appeals to have been "performed by Brown," and that declared fact is treated as material in support of that contract's validity as a basis of ownership of that building in Brown, during said repair period. But, as I understand what seems to be the uncontradicted evidence, that contract, even if it be considered and treated as not vitiated or in anywise affected by lack of antecedent "consent" of said State Board, was never carried into full effect by actual severance of said building from the land, or by deed from the school trustees to Brown, made after said adoption of said "consent" resolution. Moreover, as affecting the equities of Brown in that building during said repair period, the Court of Civil Appeals did not specifically find when he completed, or even when he began, the "addition" by which he was to earn said rock building; the evidence does not show that he ever finished or even began that work; and upon that feature the trial court made no finding of fact.

It follows, logically, as an independent proposition, and even under

the stated theory of ratification, upon which the Court of Civil Appeals decided this case, and in so far as this record goes, that Brown has not been shown to have been, at any time during said repair period, even the *equitable owner* of the building which said judgment orders sold to satisfy said personal judgment against him. At most, under the facts, and on the ratification theory, he had formerly acquired certain rights under a valid contract for the acquisition of said rock building, which had not been shown to have ripened into even equitable ownership; and such of those rights as effect, here, the issue of *ownership,* had been transferred by him, in writing, to said church trustees.

In contrast, both later contracts, under which the church acquired, *prior to the beginning of said repair period, at least all of Brown's former equities,* if any he had, in the rock building, were ultimately performed in all respects. Consequently, as affecting the issue of ownership, and in all matters of subsequent performance of contracts carrying mere equities in contradistinction to the legal title, the decided advantage rests, in this case, not with Brown, but with the church and its trustees. In brief, in estimating equities in the rock building as they existed when said material was furnished to Brown, those of the church undeniably were superior to those of Brown; yet the lien was foreclosed on the theory that Brown then owned that building.

One in possession of land, or of a building, under even a written contract whereby, *conditionally,* he is to acquire title to it, is not, prior to full performance by him of all the conditions, the "owner" of such property in contemplation of arts. 5621-3, and can not subject the property to a lien in contravention of the rights of holders of the legal title of or even superior equities in the property. Galveston Exhib. Assn. v. Perkins, 80 Texas, 62, 15 S. W., 633; Faber v. Muir, 27 Texas Civ. App., 27, 64 S. W., 938; Rollin v. Cross, 45 N. Y., 766; Jones on Liens, 1243-5-7-8-9.

In Association v. Perkins, the opinion being by Chief Justice Stayton, this court held that under the terms of the written contract there presented the Association was not the statutory "owner" of land of which it had possession, for which it had paid $10,000, but for which a residue of $14,000 of the purchase price had not been paid; and, for that reason, denied an asserted statutory lien upon the property to secure payment for building material furnished said Association while it held such possession. There this court said:

"Under the statutes of this State no person other than the owner or proprietor, his agent, trustee, contractor, or contractors, can make contracts fixing liens on lands, houses, buildings, fixtures or improvements such as are asserted in this case. Sayles' Civ. Stats., art. 3146; Gen. Laws, 1889, p. 110. . . . It seems to be well settled that a person in possession of land under a written contract to purchase is not, within the meaning of such statutes as those under which the persons claiming liens assert rights, the owner of the land or of the improvements he may place upon it, and for this reason can not fix lien on either.

McGinnis v. Purrington, 43 Conn., 143; Scales v. Griffin, 2 Douglass, 54; Hayes v. Fessenden, 106 Mass., 228; Wager v. Briscoe, 38 Mich., 587; Hickox v. Greenwood, 94 Ill., 266; Wilkins v. Litchfield, 69 Iowa, 465; Walker v. Burt, 57 Ga., 21." Said opinion also declared: "If the association had acquired an interest in the property that interest might be incumbered by it with liens which ought to be enforced to the extent of the interest, but under the contract all the right, or interest, other than a possessory right limited to a fixed period passed, it ever acquired was the right to pay the sum stipulated within the time prescribed and thus become entitled to a conveyance of the fee, but this right could not be kept in existence even for the protection of persons with whom it had made contract in violation of the agreement which conferred all the right it had." In the present case, as in that, the party in possession, against whom, as owner, the same character of lien is asserted, is not shown to have owned, unconditionally, or even to have equitably earned, any absolute interest, resting upon either a legal or an equitable title, in or to said rock building.

In the Faber case our Court of Civil Appeals at San Antonio, construing old art. 3294, now art. 5621, supra, held that Muir, who had possession of the land under a written contract to purchase, was not the statutory "owner" of it. That court, through Neill, J., in denying the asserted lien upon the property, said:

"A person in possession of land under a written contract to purchase is not, within the meaning of the statute quoted, the owner of the land or the improvements he may place upon it, and for this reason can fix a lien upon neither. Galveston Exhib. Assn. v. Perkins, 80 Texas, 67, 15 S. W., 633; Smith v. Huckaby, 4 Texas Civ. App., 80, 23 S. W., 397; Penfield v. Harris, 7 Texas Civ. App., 654, 27 S. W., 763; Thaxter v. Williams, 14 Pick., 49; Lamb v. Cannon, 38 N. J. L., 362; Guy v. Carriere, 5 Cal., 511; Johnson v. Pike, 35 Me., 291; Courtemanche v. Railway Co., 170 Mass., 50, 48 N. E., 937, 64 Am. St. Rep., 275; Steel v. Mining Co., 2 Idaho, 505, 95 Am. St., 144, 42 Pac., 585. Thus it is seen that Muir was the owner neither of the building nor of the land upon which it was erected, and that, in contemplation of the statute, McKell was the owner." In that case, also, writ of error was refused by this court. See, also, Eardley v. Burt, 182 S. W., 721.

Reverting, in due order, to the subject of ratification, it seems to me that the logic of the Court of Civil Appeals as to the validating effect of said consent resolution disproves its own final conclusions as to the ownership of the rock building. At the very outset, and, assuming, for the moment, that the legal effect of said "consent" resolution actually was to ratify, validate, and make fully operative a prior contract of the local school board for the disposition of school property, from the date of such contract, it seems to me to follow, logically, under the facts of this case, that the most important real and practical and controlling effect of such "consent" resolution in this particular instance was to

ratify, validate, and confirm, not only Brown's contract with the school trustees, but also said two later August contracts (comprising the three-cornered agreement whereunder the church was to acquire said rock building and said smaller tract of land), thereby vesting and confirming in said church, as of a date prior to said repair period, all rights and equities theretofore acquired by Brown, and, upon the whole, such rights and equities in said rock building as constituted said church, during said repair period, the equitable owner of that building.

In trying out, definitely, the legal effect of said "consent" resolution upon the issue of ownership during said repair period, let us test the correctness of the above quoted views and reasoning of the Court of Civil Appeals on ratification; first, as related to said prior contract between Brown and the school trustees, and, second, as related to said two later August contracts. The major premise of that court is that said contract between the local school board and Brown was one which said State Board legally might ratify; and its minor premise is that such ratification was the purpose, or, at least, the legal effect of said October "consent" resolution of the State Board.

Now, even though it were conceded, for present purposes, that said major premise is sound, said minor premise obviously is faulty, and the conclusion and decision of that court upon that point necessarily is erroneous, because: (a) said resolution, on its face, makes no mention of or reference to said previous contract; (b) it contains no apt words of ratification; (c) it deals with the entire ten acres, including the rock building, whereas said contract dealt with said building treated as severed, constructively, and to be removed by Brown, actually from the land; (d) the phraseology of said resolution does not indicate, and this entire record does not show or suggest, that said State Board had ever heard of said contract; and (e) the terms of said resolution are purely prospective in their signification, carrying permission rather than approval, and stipulating that the sale thereby authorized should be to the highest bidder. As a whole said resolution plainly is utterly inconsistent with the very idea of ratifying said prior contract of trade or sale of only a portion of the property, but it is entirely consistent with the conception of a future sale of the entire property or any part of it. As between individuals having unrestricted power to dispose of property, an ordinary power of attorney from an owner thereof authorizing another to sell the same or any part thereof to the highest bidder clearly would not amount, in law, to a ratification, by the donor, of a contract for sale of the property previously executed by the donee of the power. To my mind the whole theory of ratification of sale in this case seems utterly and patently untenable.

Consequently, in my opinion, and even wholly without regard to what may have been the legal effect, upon the question of ownership of said rock building, of said two later contracts which involved that question, Brown did not have or hold in or to said rock building, at

any time during said repair period, any such title or right or equity as constituted him "owner" of that building within contemplation of arts. 5621-3.

Next, in order, will be a direct consideration of the effect of said two later August contracts upon the issue of ownership of said rock building during said repair period. In general terms that feature of the case has been treated, hereinabove, but only incidentally.

In working out, logically, a correct conclusion and judgment upon the issues which this case presents, those two later contracts are, I think, of prime importance, and should be given controlling effect. Already the principal purposes and stipulations of each have been stated. Their joint effect upon the issue of ownership of the rock building, when construed and applied in the light of all the other facts of this case, and, particularly, of said earlier contract between Brown and the school trustees, and said later "consent" resolution and said still later deed, is what I shall next attempt to gauge.

Those two contracts were made at about the same time, and shortly after date of Brown's contract with the school trustees whereby he was to acquire said rock building. They were interrelated and interdependent, the first being conditioned upon execution of the second; hence they were to become unconditionally operative simultaneously only. At least in so far as Brown and the church trustees and the materialmen were concerned, and (except in so far as the matter may have been affected, at their inception, by want of consent of the State Board of Education), also, in so far as the church trustees were concerned, said two contracts did become finally operative, simultaneously, when the contract betwen the two sets of trustees was executed. In the sense stated, they became operative, and in full effect, *prior to the beginning of said repair period,* and so continued throughout that period down to the subsequent adoption of said consent resolution and the execution and delivery of said deed; whereby, under the facts, the superior equitable title to said rock building and the legal title to said two and one-half acres of land on which it stood, merged, on October 31, 1914, and then became perfect in said church trustees. Thus, in connection with the facts that Brown duly made upon the rock building the stipulated repairs, and the church trustees promptly paid him therefor the stipulated consideration, said two contracts ultimately were fully performed—differing in that respect from said earlier contract between Brown and the school trustees.

Upon the whole the net legal effect of all the stated transactions down to the inception of said repair period was, at least, to transfer to the church trustees, prior to that time, all such legal and equitable rights, titles and interests in said rock building as Brown, under any rational theory or application of the law to the facts of this case, may have acquired under his contract with the school district. Thereafter the materialmen were not justified in furnishing material to Brown as

"owner" of the rock building, and doing so furnished them no valid basis for such statutory lien.

In any event, neither the stated doctrine of *severance,* nor the stated doctrine of *ratification,* as declared by the Court of Civil Appeals, nor both conjointly, support the conclusion of the Court of Civil Appeals that Brown was the statutory owner of the rock building.

If prior to the adoption of said consent resolution, there had been, in contemplation of law, a *severance* of that building from the land, that building was not embraced by the terms of that resolution. On the other hand, if there had not been such severance, and said resolution really had any retroactive effect, it confirmed, in the church trustees, all such equitable title, if any, as Brown had acquired in said rock building; and such confirmation was as of a date prior to said repair period.

In other words, even assuming that Brown's contract with the school trustees was not void, but was susceptible of ratification by the State Board of Education, and that said Board's "consent" resolution related back to and made Brown's contract with the school trustees in all respects valid and binding from its inception, and that, as a legal consequence, Brown acquired an interest, or equity, or an inchoate title, or a qualified *ownership,* in said rock building, all as was held by the Court of Civil Appeals, it is, nevertheless, true (a) that by virtue of said swiftly following contracts between Brown and the church trustees and between the latter and the school trustees, whatever interest, or title, or equity, or ownership, if any, in said rock building, Brown had acquired passed to said church before any of said material was furnished by Spencer & Co. In brief, Brown was not the statutory owner of the rock building when said material for its repair was furnished.

Those conclusions of mine are, I think, consistent with, and really result from, a fair application of the legal principles announced in the opinion of the Court of Civil Appeals. In so saying, I do not wish to be understood as holding that, as a matter of either equity or law, any or all of said three August contracts concerning said independent school district property were valid or enforcible, either when made, or later upon and by reason of the adoption, by said State Board of Education, of its said "consent" resolution. I am merely undertaking consistently to apply to all the facts of this case the philosophy of the Court of Civil Appeals, the result of that effort being my conclusion that even under their views concerning the law of "severance" and of "ratification," erroneous though I believe them to be, in great part, the church, rather than Brown, was the owner of the superior equitable title to said rock building prior to and during all of said repair period.

If it be said that for lack of antecedent consent of said State Board said contract between said school trustees, and also the thereon conditioned contract between the church and Brown, were invalid and non-enforcible, and that, consequently, they did not carry to the church all such equities and inchoate title and ownership, if any, as Brown had

in and to and of said rock building, my reply is, that by the same test, and for identical reasons, Brown's prior contract with the school trustees, being likewise "tarred with the same stick," carried to him no equities in, or inchoate title to, or ownership of said rock building. Upon either horn of the dilemma, from a legal or from an equitable standpoint, and in any event, Brown was not, at any time, the statutory "owner" of the rock building, but as to the church, and also as to the materialmen, was the church's "contractor." Consequently, at least in so far as said claim of lien rests upon the proposition that Brown was such owner, said asserted lien should fall to the ground.

But it has been suggested, here, that only the school trustees are in position to attack the validity of said attempted disposition of said rock building to Brown, and that, although now holding both the equitable and the legal title to that building and to the land upon which it stands, said church and its trustees, under the facts stated, and particularly because they once recognized and dealt with Brown as in some sense the equitable owner of said rock building, are now estopped to defeat said claim of lien thereon by asserting that Brown never became the "owner" thereof within the meaning of arts. 5621-3. I do not consider them as being so affected, under the general law of estoppel, and our established practice, as applied to the pleadings and facts shown in the record before us. In cases of this character estoppel must be pleaded specially. Texas Bank & Ins. Co. v. Hutchins, 53 Texas, 61, 37 Am. Rep., 750. See, also, other cases cited in note 48, p. 1231, 2 Vernon's Sayles' Civ. Stat.

It is true that, as has been suggested here, and upon the ground of estoppel, various transactions, involving mortgages and pretended sales of homesteads, corporate stock notes, and other classes of contracts apparently in contravention of our Constitution, or statutes, or both, have been upheld by the courts of this State as being enforcible as to third parties without notice; but, in each instance, presumably at least, there has been in the pleadings, as a basis for such decision, a formal and specific plea of estoppel. In this case the materialmen filed no plea of estoppel; and I see no reason why this court should file and sustain such a plea for them, as against said church trustees.

Moreover, I have difficulty in trying to perceive how, if at all, the facts of this case would support such a plea, if made, or more particularly, how, as a basis for estoppel, the materialmen were placed in any worse position by reason of the fact that, in a sense, and for a limited period of time, but only *anterior to the period of time during which said material was furnished,* the church trustees dealt with Brown upon the theory that he then owned some interest or equity in said rock building—that interest or equity, if any he had, now being shown to have passed to the church trustees prior to the furnishing of said building material.

Faust, the member of the firm of Spencer & Company who made the affidavit to said claim of lien, and who seems to have handled practi-

cally the whole matter. for that firm, testified, in substance, that when he loaded the lumber out he "was dealing with both the church trustees and Brown," and that "those fellows (meaning the church trustees) told me Brown was *their contractor*," the first I knew of it, when they came for those shingles (September 1). . . . I supposed probably he had *a contract with them.*" Even Faust's affidavit to said claim of lien avers, expressly, that the material covered by the attached account was "furnished to J. G. Brown, a contractor." Treatment by the materialmen of Brown as *owner* of the building seems to have crept into the foreground of this case incidentally only, and entirely as an afterthought.

Next in order comes the second general division of this case, wherein said claim of lien rests upon the alternative, and, apparently, the main contention of the materialmen, to the effect that said material was furnished to Brown as the statutory "contractor" of the church trustees, and that due and seasonable "notice" of the furnishing of said material was given to said church trustees as *owners* of said rock building. Was such notice so given? If yea, the record before us fails to show it. On the contrary, the record is to the effect that the required notice was not given to the church trustees *as such material was furnished,* and that, in reality, no character of notice concerning said material was given to them, or to anyone else, until long after they had finished paying their contractor, Brown, the entire contract price for making said repairs, and that even such notice as was given them, even then, was not in pursuance of any statutory requirement, and, therefore, as related to the asserted lien, was of no legal consequence whatever, in any event.

Concerning "notice" the only allegations of plaintiffs' amended original petition were as follows:

"Plaintiffs further allege that within ninety days after said indebtedness accrued, they delivered written notices to each of the defendants containing each and every item of material furnished, showing the amount due and unpaid, as required by article 5623, Revised Statutes of Texas, 1911, and that within the time specified by law, plaintiffs delivered to the clerk of the County Court of Erath County, Texas, a sworn account of all the material so furnished, the amount due and unpaid, and did all things required of them by the Constitution and statutes of the State of Texas to fix and establish their materialman's lien and give notice thereof to all persons dealing with said property. . . . Plaintiffs further allege that at the time said deed was executed and delivered and at the time the defendants Bosque Presbyterian Church, U. S. A., R. A. Hicks, T. A. Howard and J. D. Knight, trustees of said church, paid the defendant Brown for construction and repair of said building. They had notice of plaintiffs' lien." Assuming error in punctuation, I read the last two sentences as one.

Except in so far as it wrapped up a conclusion of the pleader, neither said petition nor said claim of lien alleged or showed that *any statu-*

*tory notice* of the furnishing of said material was given to the church trustees. Nowhere did either state or show, expressly or otherwise, that the materialmen gave to the church trustees any character of notice relative to said material, from time to time, *when and as the various items thereof were so furnished.* Consequently, except as stating a mere conclusion of the pleader, said petition did not even present a case for establishment and foreclosure of such statutory lien upon the rock building upon the theory that it was owned by the church, or its trustees, during said repair period. On the contrary, said petition alleged that "at the time said contract (referring to the contract between Brown and the materialmen for said material) was entered into and said material furnished, the defendant J. G. Brown was the owner of the building referred to herein upon which the material described herein was used"; and, in substance, that Brown then owned said building by virtue of his said contract with said school trustees. In another paragraph said petition expressly alleged present ownership of said building by defendants in error.

Said claim of lien is somewhat peculiar in regard to allegations of ownership of the building and of the land on which the lien is claimed, and also in regard to the giving of notices of the furnishing of said material. It sets out an itemized statement of the dates of delivery and character and value of the several items of material furnished, beginning with September 1, 1914, and ending with only one item, of the value of $5.40 on October 1, 1914. Then follows the affidavit, as follows:

"C. G. Faust, affiant, makes oath and says that the foregoing is a true and correct account of the material furnished to J. G. Brown, a contractor, by R. B. Spencer & Co., a firm composed of R. S. Spencer and C. G. Faust, dealers in lumber and other building material; and that the prices therefor, as set forth in the foregoing account, are just and reasonable, and that the same is unpaid as stated $159.92, and there are no just or lawful offsets, payments or credits to be allowed on the same; that said material was furnished to said J. G. Brown to be used in the repair and reconstruction of one building or house to be used as a church house, which building or house affiant is informed and believes is owned by R. S. Hicks, T. A. Howard and J. D. Knight as trustees of the Bosque Presbyterian Church, U. S. A., of Lingleville, Texas, in Erath County; and that said material was furnished to the said J. G. Brown under and by virtue of his contract of purchase between said J. G. Brown and said R. B. Spencer & Co. Affiant further states that R. B. Spencer & Co. have furnished the trustees of Bosque Presbyterian Church, U. S. A., an exact copy of the foregoing list of items and prices and amount due, as required by art. 3296 (5623), Revised Statutes of the State of Texas. Affiant further states that the house or building herein referred to, and the land upon which it is situated are described more particularly as follows (description of said two and one-half acres tract). By virtue of the laws of the

State of Texas and the premises here set out, R. B. Spencer & Co. claim materialman's lien upon said described land, together with the said bonds or buildings situated thereon. Affiant further alleges upon oath that during a portion of the time during which the above material was being furnished to said J. G. Brown, he is informed and believes that J. G. Brown was possessed of such contracts and title to said land that he might claim to have been the owner of some equitable or colorable title to same, which said title was capable of being enforced. Wherefore, R. B. Spencer & Co. have delivered copy of foregoing statement of items, prices and amount to said J. G. Brown and they claim lien upon said land and house whether the title be in Brown or the church or both of them."

That document, which was offered in evidence, does, indeed, aver, in substance, that a copy of the embodied *statement of account* had been furnished to said church trustees "as required by art. 3296 (5623)"; but no such notice is required by that or any other statute of this State. Actual notice of the filing of a claim of such lien is not required by law, constructive notice of the filing thereof in the county clerk's office being imported under our registration laws. No witness, not even Faust, who was on the stand, gave any testimony showing or tending to show that said materialmen ever gave or attempted to give to the church trustees, or to Brown, or to anyone, any written notice whatsoever of each, or of any, item of such material *as it was furnished*. Faust testified: "I filed this account with the clerk on the 27th of November, 1914, and I mailed to each of these defendants a carbon copy of that account." As above indicated, the only written "notice" of any kind, at any time, to anybody, which this record discloses, was the notice mentioned in said claim of lien and in the following quotation from the trial court's "conclusions of fact and law," which notice, as there shown, was given long after the church trustees had paid Brown in full for said repairs, and which, even then, was, merely, a *single* copy of the "written notice and itemized statement of account" which that court found to have been filed in the county clerk's office, said account being further identified by that court as the one attached to plaintiff's amended petition.

Concerning the giving of statutory notices, and the fixing of the asserted lien, the "conclusions of fact" filed by the trial court are these, and none other:

"I further find that the said Brown was an independent contractor, that said church paid him in full in accordance with its contract with him on September 28, 1914. I further find that on November 27, 1914, the plaintiffs served a written notice and itemized statement of account, a copy of which is attached to their amended petition, on the trustees of said church, and on the 27th day of November, 1914, filed with the clerk of the County Court of Erath County, Texas, the itemized account and affidavits set forth in said amended petition . . . which notice was served on said trustees approximately sixty days after

they had paid the said Brown in full for his work on said church."
Said findings of fact by the trial court amount, primarily, to an ex-
press finding that, on November 27, 1914, the materialmen did serve
on the church trustees a written notice of said statement of account
and claim of lien supported by affidavit, which were filed on that day
in the county clerk's office; and, secondarily, to an implied finding that
no written notice of the character and value of each item of said ma-
terial was ever given by the materialmen to anyone *as such items were
furnished.* This record is destitute of evidence to the contrary. Oral
notices were given to the church trustees on and after October 27;
but oral notices are valueless under arts. 5621-3, and they came too
late. Texas Glass & Paint Co. v. Crowdus, 108 Texas, 351, and c. c.
The judgment of the trial court denying a lien, was, therefore, con-
sistent with its "conclusions of fact," and with the uncontroverted evi-
dence; nevertheless, that portion of said judgment has been finally over-
turned, and the asserted lien established and foreclosed, even in the
absence of statutory notice. However, the Court of Civil Appeals de-
clares: "Appellants filed their account for record and gave the notice
required by law in order to fix a materialman's lien upon the church
building and the ground upon which it was situate, such account being
filed and notice being given within the time and in the manner required
by law. . . . The material was furnished to Brown by appellants
during the month of September. . . . The date of the completion
of the repairs upon the rock building by Brown is not definitely shown
but was some time in the month of September, about the 28th day
thereof, when it was completed and turned over to the church." No
other conclusion or finding of fact concerning the giving of any "notice"
is found in said opinion.

How, then, is the quoted conclusion that "such account" was "filed,"
and that "notice" was "given within the time and in the manner re-
quired by law," to be here construed and applied? Ordinarily, let it
be conceded, such language, in a suit to establish and foreclose such
statutory lien, would be understood and held by this court to mean
that thereby the Court of Civil Appeals meant to hold that in any
event the materialmen duly and seasonably gave to the "owner" of
the property written notice of each and every item of material *when
and as it was furnished,* and afterward filed their account and claim of
lien, supported by affidavit, all in manner and form and at and within
the times prescribed by law; and, ordinarily, such conclusions of fact
would bind this court. But is this court at liberty, in this case, so to
construe and apply that conclusion of fact? I think not, for these rea-
sons: (a) The quoted language does not explicitly so state the facts,
only general terms being employed. (b) When so construed, such
conclusion would be at once in conflict with the fair effect of the ex-
plicit above quoted conclusions of fact made and filed by the District
Court, and in conflict with the well established rule of practice that in
support of the judgment of a trial court in a cause tried without a

jury, appellate courts will presume that, except as otherwise expressly stated in such judgment itself or in such filed "conclusions" of the trial court, all questions of fact were resolved by the trial court to such effect as to support the judgment rendered by the trial court. (c) Such conclusion of the Court of Civil Appeals, if so construed, would be wholly unsupported by any evidence in the record before this court. (d) Moreover, the disposition of this case was not grounded by the Court of Civil Appeals upon the theory that the church was the owner of the rock building, and Brown merely a contractor; under which theory, but not otherwise, it would be material to inquire whether statutory notices of the furnishing of the material were given, duly and seasonably, to the church trustees. On the contrary, the decision of that court rests, avowedly, upon its conclusion of fact that, during said repair period, Brown, rather than the church, or the school district, was the owner of said rock building. Under the latter theory, any and all notices to the church trustees were wholly unnecessary and immaterial, as, indeed, were all notices to Brown. Why should Brown, if he owned the rock building, have, from time to time, "written notice" of the delivery of said material to himself? Our statute makes no such vain requirement; nor, under arts. 5621-3, and our general registration laws, is it necessary to give any *actual* notice of the filing of such claim of lien. Really, in the light of the record, the phraseology of the quoted conclusion of the Court of Civil Appeals can hardly be treated as meaning that statutory notices were given to the school trustees as owners, unless it be assumed that, for the moment, the writer thereof may have been under the impression that the "notice" required by arts. 5621-3 is merely one to the effect that the sworn account and claim of lien supporting the affidavit had been filed in the clerk's office. However, that impression, if it existed, may have been suggested by, and certainly was in harmony with, the only averments concerning written notice set out in said claim of lien or in plaintiff's pleadings, or in the evidence.

Under all the law and facts and circumstances, it is clear that the quoted conclusions of fact by the Court of Civil Appeals concerning "notice," whether intended as relating to notice to Brown, as "owner," or as related to said church trustees as "owner," should be treated, in this court, as wholly negligible and unimportant.

Inherent, therefore, in this case, as disclosed by the record as a whole, is this somewhat obscured but absolutely uncontroverted fact: said materialmen did not give said church trustees, either *within the time or in the manner*, provided by law, notice of the furnishing of any of said material for repairs on said rock building  Inevitably the legal effect of that demonstrated fact is, theoretically, and should be, practically, to destroy said claim of lien, in so far as it rests upon the contention that said church, or its trustees, owned that building throughout or during said repair period. And, just as certainly, that legal consequence would result had the church, or its trustees, owned and

held undisputed possession of said building and land, throughout said entire period of time, under a duly authorized executed and recorded deed to them from said school trustees carrying, unquestionably a perfect fee simple title to both building and land.

An acute phase of this matter of "notice" is presented by said judgment of foreclosure ordering said rock building sold to satisfy said personal judgment against Brown, thereby practically compelling. said church to pay, again, for said material, although, seasonably, and without having received even a pretense of any statutory notice of the furnishing of any of said material, and long prior to the filing of said claim of lien, said church trustees paid Brown, their contractor, the entire contract price for making said repairs on that building, including the value of said material.

Is such double burden saddled by the laws of Texas upon owners of buildings and lands? Clearly not; and, so far as I know, nobody contends, abstractly, that they are; what I have treated as errors in the disposition of this case having resulted, in great part, from what I consider a misapprehension of the material facts of the case.

In providing for a materialman's lien to secure payment for material *furnished to a contractor* to be used in repairing any house or building, etc., our statute declares, in a restrictive proviso: "In no case shall the owner be compelled to pay *a greater sum for or on account of* labor performed or *material,* machinery, fixtures and tools *furnished* as provided in this chapter *than the price or sum stipulated in the original contract between* such *owner* and the original *contractor or builder* of such house, building, fixtures, improvements or repairs." Art. 5623.

The evident intent of our law is that in the absence of such written notice to such "owner," duly given *prior to payment,* by the "owner" to the "contractor," of the full contract price between them for the repairs, the property is relieved, absolutely, of any statutory lien to which, otherwise, it may have been liable. To the effects indicated, unquestionably, are the previous decisions of this court and of various Courts of Civil Appeals. Horan v. Frank, 51 Texas, 404; Fullenweider v. Longmoor, 73 Texas, 480, 11 S. W., 500; Dudley v. Jones, 77 Texas, 69, 14 S. W., 335; Johnson v. Improvement Co., 88 Texas, 505, 31 S. W., 503; Berry v. McAdams, 93 Texas, 431, 55 S. W., 1112, 56 S. W., 193; Nichols v. Dixon, 99 Texas, 263, 89 S. W., 765; Lonergan v. Trust Co., 101 Texas, 63, 104 S. W., 1061, 106 S. W., 876, 129 Am. St. Rep., 803, 22 L. R. A. (N. S.), 364; Texas Glass & Paint Co. v. Crowdus, 108 Texas, 346, 193 S. W., 1072; Riter v. Mfg. Co., 19 Texas Civ. App., 516, 48 S. W., 758; Sunset Brick & Tile Co. v. Stratton, 53 S. W., 703; Herring v. Kroeger, 23 Texas Civ. App., 672, 57 S. W., 980; Baumgarten v. Mauer, 60 S. W., 451; Faber v. Muir, 27 Texas Civ. App., 27, 64 S. W., 938; Nichols v. Dixon, 85 S. W., 1051; Beilharz v. Illingsworth, 62 Texas Civ. App., 647, 132 S. W., 106; Texas Glass & Paint Co. v. Iron Co., 147 S. W., 620; Texas Builders'

Supply Co. v. Beaumont Construction Co., 150 S. W., 770; Wilkerson v. Satterfield, 167 S. W., 275.

In Horan v. Frank, supra, this court upheld, as to a subcontractor, the legislative construction given by the Act of August 7, 1876, to section 37 of article 16 of our Constitution relating to liens for labor and material, but held that, as against the homesteader, the subcontractor's rights might be protected, by fixing upon the homesteader, through proper notice, a personal liability "not to exceed the amount then due by the property owner to the principal contractor."

In Fullenweider v. Longmoor, supra, plaintiffs asserted a statutory materialman's lien under Act of March 28, 1885, old arts. 3164-78, which required "ten days' notice in writing before the filing of a lien, as herein required," and declared that "thereafter said owner, owners or agent shall be authorized to retain in his hands the amount claimed until the same has been settled or determined not to be due." Under our present statutes the form of, and the time for giving, statutory notices in like instances has been changed; but its legal effect, when duly given, is just the same. Such notice merely impounds the unpaid contract price, or the unpaid portion thereof, if any, for the construction or repair work, including materials. That such was the effect of that former law that cited decision expressly held. Therein this court said:

"The lien acquired is, however, in all cases subordinate and never superior to the terms of the contract. No original indebtedness is created by establishing the lien. The debt of the owner of the property as fixed by the contract can not be modified, changed, or enlarged by the proceedings fixing the lien. These proceedings do no more than establish a lien against the property for such amount as is unpaid and is payable by the terms of the contract while the proceedings are commenced. From the time of the service of the notice upon the owner of the property he can make no further payment to the contractor without incurring liability for the lien debt, if proper steps shall be taken to establish it, to the extent of his indebtedness under the contract when the notice is served. If the owner of the property is indebted to the contractor the service of the notice, if followed by the acts required to fix the lien, secures the fund as does a writ of garnishment in an ordinary case, except that a pro rata distribution may become necessary by the terms of the statute between different lienholders and the process of collecting the money is different. The petition in this case was insufficient because it contained no allegation that the owner of the improved property owed the contractors anything at the date of or at any time subsequent to the service of the notice of their claim. The contract made part of plaintiff's petition showed that the larger part of the debt had been paid by the execution of a negotiable promissory note then due. The contract disclosing this was recorded. The owner of the property is not required to pay for the improvement twice in order to protect those who may acquire liens. The law does not deny him the privilege of paying for the work in advance with cash or

property, and who would hold him liable as a debtor must show he was in fact such when the right against him was acquired."

In ·Dudley v. Jones, supra, which seems to have arisen under said Act of 1885, this court said:

"The owners of the property were not liable to the subcontractor for any amount paid to the contractor before being served with notice of the subcontractor's claim. By establishing his claims as a mechanic's lien, the subcontractor's right related back to the date of his notice to the owners and became a lien upon the property for any amount then due or subsequently accruing in favor of the contractors, not exceeding the subcontractor's demand, there being no other mechanic's lien against the property. The right of protection through the instrumentality of a mechanic's lien is subject to the right of the owners of the property not to be compelled to pay a greater price for the improvement than they had contracted to do, unless such result was occasioned by their making payments after notice of the claim was given to them."

Berry v. McAdams, supra, involved construction and application of section 3 of the Act of 1889, which was substantially the same as old art. 3296 and as our present art. 5623, supra, in connection with that provision of old art. 3308, now art. 5635, which declares: "But no owner or proprietor shall in any case be required to pay, nor his property be liable for, any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt." In that case this court said: "It will be observed that the law requires all who may furnish material to any person other than the owner to notify the latter of the character and value of the material so furnished so that he may protect himself by reserving out of the price to be paid by him the value of material placed into such improvement." The certificate from the Court of Civil Appeals showed that Housewright, Swayze & Co. seasonably had actual knowledge that Berry, their contractor, owed McAdams, the lumber dealer, for such material; nevertheless, this court held: "McAdams did not fix his lien nor give the written notice before payment was made by Housewright, Swayze & Co. to Berry, the contractor, and is not entitled to enforce a lien upon their property for material furnished to a subcontractor."

In Lonergan v. Trust Co., supra, which arose under contracts made in 1899, this court held: "The proceeding prescribed by the statute by which a materialman is permitted to fix a lien· for material furnished by him and used in the erection of an improvement does not create a debt against the owner of the property but operates as a writ ·of garnishment would and appropriates so much of the money in the hands of the owner as is then due and payable or may become due and payable to the contractor to the extent necessary to establish that claim. Fullenweider v. Longmoor, 73 Texas, 480." In clearness and force that statement of the law which I consider applicable to this case is incomparably fine.

In Texas Co. v. Crowdus, supra, wherein the claimants of the lien failed to serve the owner of the property with any written notice of their claim against his contractor, this court held: "This was an essential thing for them to do as fixed by the statute in order for them to secure a lien upon the building and lot. Having defaulted in the service of said written notice of their claims they did not acquire a lien on said property"; citing several of the above cited decisions of this court.

Third. As to the existence, in this case, of conflict in decisions, my views, already, hereinabove, have been indicated sufficiently. Our statute provides that the appellate jurisdiction of this court shall extend to "all questions of law" arising in cases within the appellate jurisdiction of the Courts of Civil Appeals "in which one of the Courts of Civil Appeals holds differently from a prior decision of its own or of another Court of Civil Appeals upon any such question of law." Acts 1917, ch. 75. Under our Constitution and laws, one of the prime functions of our Supreme Court is to iron out such conflicts in decisions; and that power and authority carries a corresponding duty. In its discharge the initial step is the granting of the writ of error. That being denied, the judgment of the Court of Civil Appeals must be enforced.

And thus, although our statute, in providing for a materialman's lien for material furnished to a "contractor," expressly restricts its operation to "the material furnished at the time or subsequent to the giving of the written notice above provided for (art. 5623), and although said *proviso* of that very article expressly engrafts upon that limitation the added restriction that "in no case shall the owner be compelled to pay a greater sum *for or on account* of . . . material . . . furnished as provided in this chapter than the price or sum stipulated in the original contract between such owner and the original contractor," and although prior to receipt of any written notice whatsoever concerning material which went into said repairs on said rock building said church trustees seasonably paid their contractor the entire contract price for said repairs thereon, *including said material,* and despite said oft repeated decisions of our Supreme Court and of other high appellate courts of this State, and by said final action of this court in this case, said church, or its trustees, are now required to pay, *a second time,* for said material, or to lose their church building, by sale of it under said judgment of foreclosure and removal of the building from the land.

The sum of money involved, in this instance, is small; nevertheless, this case involves the judicial divestiture of fundamental property rights which the people, through their Constitution and laws, have confided to the final keeping and protection of their Supreme Court. Even in such a case should be exemplified the thought of Hammond to the effect that of law it should be acknowledged that the very least is not beneath her care nor the greatest exempt from her power.

The foregoing is intended as a reflex of merely my own individual views in the premises. They are expressed, herein, to make my own attitude in this case and the supporting reasons plain, and under a strong conviction that the granting of the writ of error would have resulted, probably, in a more accurate ascertainment and in better protection of substantial rights of litigants, and in appropriate preservation of the harmony of our jurisprudence, and in real conservation of the time of this court.